**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

CHAKA KWANZAA,                          :
                                        :
                Plaintiff,      : Civil Action No. 05-5976(RMB)
                                        :
        v.                              :       **O P I N I O N**
                                        :
DEVON BROWN, et al.,                    :
                                        :
                Defendants.     :
_____ :


**APPEARANCES:**

        CHAKA KWANZAA, Plaintiff <u>pro</u> <u>se</u>
        #238671/96993B
        South Woods State Prison
        215 Burlington Road South
        Bridgeton, New Jersey  08302

**BUMB**, District Judge

        Plaintiff, Chaka Kwanzaa ("Kwanzaa"), is a state prisoner confined at the South Woods State Prison in Bridgeton, New Jersey, at the time he submitted this Complaint for filing.  He seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 28 U.S.C. § 1915.  He also seeks appointment of counsel.  Based on his affidavit of indigence, and his six-month prison account statement, the Court grants Kwanzaa's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> and directs the Clerk of the Court to file the Complaint without pre-payment of the filing fee.

Having reviewed the Complaint to identify cognizable claims pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court concludes that the Complaint should proceed in part.

## I.  BACKGROUND

The following factual allegations are taken from the Complaint and are accepted as true for purposes of this review. In his Complaint, Kwanzaa asserts claims against numerous defendants employed by the New Jersey Department of Corrections ("NJDOC"), Central Medical Services ("CMS"), and the New Jersey State Parole Board ("NJSPB").  Kwanzaa states that he had filed an earlier action with respect to many of the claims in this action, which was dismissed for failure to conform to Fed.R.Civ.P. 8(a)(2).[1]  He also alleges that he has a civil action pending in state court raising the claims in this action.

Kwanzaa alleges that from the beginning of his confinement in state prison, he has been the "target of systemic and conspired and coordinated abuse at the hands of individual defendants," all employees of NJDOC, CMS, and NJSPB.  He asserts claims of "routine denial of access to the courts, deprivation of medically prescribed living aids and devices and appropriate

---

[1]  Plaintiff had appealed to the Third Circuit, but his appeal was dismissed for failure to timely prosecute by Order entered June 6, 2005.  He had also filed a writ of mandamus with the Third Circuit to compel the district court to rule on his motions in the action which had been dismissed.  The Third Circuit denied the writ on February 14, 2005.

medical care, discrimination, [and] retaliation for Kwanzaa's
practice of documenting grievances and redress with the court
against defendants." (Complaint, ¶ 2). Kwanzaa admits that he
had filed an earlier civil action in this district court,
regarding the same claims as raised herein. See Doe v. Knowles,
et al., Civil No. 03-3956 (AET)(Document Entry No. 11). That
earlier case was dismissed without prejudice by this Court, via
Memorandum & Order filed February 8, 2005. At that time, the
court had found that Kwanzaa was unable to clarify or articulate
his claims in a rambling, incoherent 37-page Complaint. Id.
Kwanzaa further acknowledges that he has a pending state law
action regarding the very same claims as asserted here. (Compl.,
¶ 4). He does not provide any further information about the
state court action.[2]

Kwanzaa's present Complaint also rambles and alleges
numerous violations against more than thirty individual
defendants. Thus, to effectively screen the claims in the
Complaint as required under 28 U.S.C. §§ 1915(e)(2) and 1915A,

---

[2] The Complaint makes only a general reference to a related
pending state court action, and does not indicate those claims
that are similar to the claims alleged in this Complaint. Thus,
this Court cannot determine whether the state court action should
be stayed pending resolution of related federal constitutional
claims in this Court. It also is not clear whether any of the
alleged claims here have been fully adjudicated in state court,
which may make such claims subject to res judicata or claim
preclusion bar. Accordingly, the Court will leave this issue to
be addressed by the parties.

the Court will review the allegations as they are grouped by defendants in the Complaint.

Claims Against NJDOC Defendants

Kwanzaa begins his Complaint by asserting claims against NJDOC officials.  First, plaintiff alleges that defendant Devon Brown, NJDOC Commissioner, received notice in May 2002 regarding threatening charges and has refused to remedy the problem.  In particular, Kwanzaa alleges that Brown has allowed NJDOC officials to violate plaintiff's medical information rights by permitting open door medical examinations while plaintiff is in administrative segregation.  He also complains that Brown has failed to correct inaccurate record keeping with respect to Kwanzaa's prison file.  For instance, Brown has not restored 390 days commutation credits taken in August 16, 1999 and allegedly reversed on July 21, 2003 by the New Jersey Appellate Division. Brown also did not restore 180 days commutation credits taken in August 2002 for an incident that allegedly did not occur in March 1995.  Kwanzaa further alleges that Brown has refused to place video cameras in Bayside State Prison ("BSP") and South Woods State Prison ("SWSP") in blind areas to prevent inmate assaults. Brown has allegedly refused to put disability devices and access in New Jersey State Prison and East Jersey State Prison administrative segregation areas for Kwanzaa and other prisoner's with disabilities, in violation of the Americans with

4

Disabilities Act and the Rehabilitation Act.  Finally, plaintiff complains that BSP and SWSP do not have any policy that allows inmates mail receipts for outgoing legal mail.  (Compl., ¶ 25).

As to defendant John Blakesee, Kwanzaa complains that defendant did not respond to plaintiff's inquiry about the restoration of commutation credits for the same period of time as asserted in ¶ 25 of the Complaint.  This apparently affects Kwanzaa's parole eligibility date.  (Compl., ¶ 26).

Kwanzaa next complains that defendants Gary Sheppard and L. Meehan, NJDOC adjudicators, violated his right to due process when they refused him the opportunity to cross-examine and confront witnesses at his prison disciplinary proceedings in August 1999, March 2001, and April 2002.  He also alleges that the charges were reversed in July 2003 by the New Jersey Appellate Division, and in retaliation, Kwanzaa was subjected to detention and administrative segregation.  This cost him 75% restoration credits, work credits, prison status, contact visitation, and attendance at religious services.  He also had one of his actions dismissed on appeal for failure to timely file.  (Compl., ¶ 27).

On March 21, 2005, plaintiff alleges defendant K. Ireland violated his right to due process by denying plaintiff his right to effective confrontation and cross-examination rights and the

right to present documentary evidence or view video and
documentary evidence against him.  (Compl., ¶ 28).

Next, Kwanzaa asserts that defendant J. Knowles had him
arbitrarily transferred to another prison facility in December
2002 in retaliation for Kwanzaa filing an action in court in
1999.  On May 7, 2003, Knowles threatened Kwanzaa with
disciplinary charges and had Kwanzaa placed in detention after
Kwanzaa threatened a law suit.  Kwanzaa was allegedly found not
guilty of these disciplinary charges, but Knowles continued to
retaliate against Kwanzaa from December 9, 2002 until March 17,
2004, by keeping plaintiff in administrative segregation.
Knowles also refused to comply with Kwanzaa's medical orders to
ambulate with a cane and be housed on the first floor.  Kwanzaa
further asserts that Knowles violated his rights by allowing open
door medical examinations, denying disability devices and access
in administrative segregation and denying legal access to the
courts, which resulted in his appeal being dismissed in 2002.
(Compl., ¶ 29).

Kwanzaa asserts many of the same claims against defendant
Lydell Sherrer, namely, that Sherrer violated his rights by
allowing open door medical examinations, denying disability
devices and access in administrative segregation, and failing to
restore commutation credits, and arbitrarily transferring Kwanzaa
to another prison facility in retaliation for Kwanzaa filing

6

civil actions.  Plaintiff further asserts that, in January 2005, Sherrer arbitrarily transferred Kwanzaa to BSP where Kwanzaa was assaulted and placed in detention for 43 days, from February 3, 2005 to March 17, 2005.  In May 2004, Kwanzaa's law books and other personal property were allegedly stolen and plaintiff claims Sherrer arbitrarily denied plaintiff's grievance for remedy.  Kwanzaa also alleges that he was denied legal access from May 2002 to December 9, 2002, when his appeal was dismissed as untimely.  (Compl., ¶ 30).

Claims Against BSP Defendants

Kwanzaa next asserts claims against BSP defendants.  On January 27, 2005, he alleges that defendant SCO Caldwell subjected him to an arbitrary cell search after Kwanzaa had filed a grievance about retaliatory and arbitrary cell searches. Kwanzaa filed another grievance on February 2, 2005, and Caldwell again subjected Kwanzaa to an arbitrary cell search on February 3, 2005.  Plaintiff further alleges that Caldwell filed a false disciplinary charge against him, which was later dismissed, in retaliation for Kwanzaa filing grievances regarding the searches. Kwanzaa received 43 days detention as a result of this violation. Caldwell also confiscated Kwanzaa's cane that was medically prescribed to him.  (Compl., ¶ 31).

Defendant SCO Crenny also filed a false disciplinary charge against Kwanzaa on February 3, 2005, he asserts, after Kwanzaa

7

threatened to file a civil action against Crenny for assaulting plaintiff while he was being escorted to detention.  On the same date, defendant D. Ayers allegedly threatened plaintiff with a fabricated disciplinary charge and violated plaintiff's right to privacy by listening to medical information exchanged between plaintiff and a nurse while plaintiff was in detention.  Kwanzaa also alleges that these two defendants confiscated his medically prescribed cane and refused to return it to him while he was in detention.  (Compl., ¶¶ 32, 33).

Claims Against EJSP Defendants

Next, Kwanzaa asserts claims against East Jersey State Prison ("EJSP") defendants with respect to incidents that occurred in 1999 through 2002.  In particular, as to defendants S. Pinchak, T. Moore, R. Swatij, W. Wise, SCO Gervasi, SCO Godown, and Sgt. McWherter, plaintiff claims that these defendants conspired to retaliate against him on August 16, 1999 because Kwanzaa had filed grievances and/or court actions to remedy violations of his civil rights.  These violations included open-door medical examinations, denial of medical devices while in administrative segregation, denial of legal access, loss of work wage, prison status, and contact visitation, and loss of commutation credits and early parole eligibility.  Kwanzaa also asserts that had he not been subjected to the August 16, 1999 disciplinary charges, he would never have received later

"retaliatory" threatening charges in November 1999 and February 2000, which resulted in the loss of 344 days of commutation credits.  (Compl., ¶¶ 35, 36).

Finally, Kwanzaa alleges that SCO Petti showed deliberate indifference to plaintiff on April 19, 2002, when he confiscated Kwanzaa's cane when Kwanzaa was being transported to Northern State Prison ("NSP").  (Compl., ¶ 38).

Claims Against SWSP Defendants

Kwanzaa next asserts claims against individual defendants at South Woods State Prison ("SWSP").  First, against the Warden K. MacFarland, Kwanzaa complains that, on March 17, 2005, he placed MacFarland on notice of his 1999 grievances after he arrived at SWSP, and she has done nothing to remedy them.  Kwanzaa also refers to grievances that are, as alleged by plaintiff himself, part of his pending lawsuit in state court.  He alleges that SCO Eisinger verbally harassed him when he arrived at SWSP by telling plaintiff "Go stand by the fucking wall nigger".  Kwanzaa further complains that he received two disciplinary charges for refusing to bunk on an upper level because of his medical restrictions.[3] He states that he appealed these charges and the matter is still pending in the state appellate court.  (Compl., ¶ 39).

---

[3]  Kwanzaa states that he is forced to stand outside his cell door for 15 to 30 minutes while he is waiting for the officers to open the cell.  He claims that this is against medical orders.  (Compl., ¶ 39).

Kwanzaa claims that MacFarland continues to violate his right to legal access to the courts; namely, he alleges that legal materials issued for copying are perused by the inmate paralegals, law librarian clerk and administration, request slips for library access take seven days to be processed, and copy of legal material is not processed timely to meet court deadlines. Further, while he is in detention, Kwanzaa is not allowed legal material to work on and he has no outgoing legal mail slips to prove that mail went out.  (Compl., ¶ 40).

MacFarland also refuses to address Kwanzaa's administrative remedy forms within the time as regulated.  Kwanzaa alleges that this is done to hinder him from filing civil actions in court. He admits that some of the grievances are returned with "made up answers or no answers".  (Compl., ¶ 42).  MacFarland, plaintiff claims, has arbitrarily discriminated against him by having two jobs taken away from Kwanzaa between April 6, 2005 and May 2005, allegedly because of plaintiff's disability.  She also has refused to correct his prison records by failing to restore 390 days commutation credits, which effects Kwanzaa's parole date. Kwanzaa further complains that MacFarland has not corrected the issuance of 7 points to his prison score when he arrived at SWSP, despite remedy requests.  (Compl., ¶¶ 42, 43).

Kwanzaa also complains that MacFarland has a policy of no medications allowed to prisoners in detention.  On April 11,

10

2005, Kwanzaa's personal property, including his back, leg and arm braces, egg crate mattress, medical boots, and eyeglasses were confiscated and were ordered to be sent home against medical advice.  MacFarland also allows open-door medical examinations and refuses to install video cameras in the blind areas of SWSP to prevent inmate assaults.  (Compl., ¶¶ 44-47).

On July 7, 2005, Kwanzaa alleges that defendant Sgt. J. Dice issued a retaliatory charge against plaintiff for having filed a grievance in March 2005 and an appeal.[4]  Kwanzaa then filed a grievance and appeal with defendant A. Jalloh for a remedy on July 12, 2005.  Kwanzaa was adjudicated guilty by a courtline officer on July 13, 2005.  Jalloh returned Kwanzaa's appeal "unremedied" and threatened Kwanzaa with detention if plaintiff filed another appeal.  Kwanzaa sent a letter to then-Governor Codey, who referred the matter to defendant Devon Brown.  Kwanzaa has not received any answer from defendant Brown.  He claims that the NJDOC arbitrarily files minor charges against prisoners to "hinder" them from seeking redress with the courts.  (Compl., ¶ 48).

On March 17, 2005, Kwanzaa states that defendant Eisinger violated his rights under the Eighth Amendment when Eisinger made

---

[4]  Kwanzaa alleges that on March 17, 2005, defendant Dice assaulted plaintiff by kicking him while plaintiff was having an asthma attack.  Dice allegedly filed a false disciplinary charge to cover his actions.  (Compl., ¶ 52).

plaintiff stand for a prolonged period of time (about 20 minutes) in his housing area with deliberate indifference to plaintiff's medical condition.   Eisinger also allegedly filed a retaliatory charge against Kwanzaa after Kwanzaa complained.   When Kwanzaa threatened to file an action with the courts, Eisinger allegedly fabricated orders to house Kwanzaa on an upper level without regard to the medical restriction in his file stating that he should be housed on the ground floor.   Kwanzaa was found guilty of the disciplinary charge and defendant Jalloh affirmed on administrative appeal.   His appeal of this matter to the New Jersey Appellate Division is pending.[5]   Eisinger again filed an "on the spot" charge against Kwanzaa on November 4, 2005 after Kwanzaa objected to Eisinger's order to plaintiff to stand for a prolonged time.   However, Kwanzaa admits that this charge was dismissed because of his medical restriction.   (Compl., ¶ 49).

Next, Kwanzaa alleges that, on September 16, 2005, defendant Sgt. McDowell arbitrarily denied plaintiff access to Ju'mah religious services in retaliation for plaintiff having filed a grievance against him in 1999.   On October 7, 2005, McDowell reviewed plaintiff's medical information in the medical department in front of other correctional officers.   Kwanzaa

---

[5]   Kwanzaa complains that this disciplinary charge has subjected him to loss of full minimum status, added seven points to his prison score, 15 days in detention, and denial of parole on April 28, 2005.  (Compl., ¶ 49).

objected to their review of his private medical information, and McDowell ordered that plaintiff be placed in a detention holding cell while McDowell continued to review Kwanzaa's medical records.  After ten minutes, Kwanzaa's medical materials were returned to him.  McDowell also allegedly tampered with plaintiff's mail on October 27, 2005, and his appeal had to be filed nunc pro tunc.  (Compl., ¶¶ 50-51).

Finally, Kwanzaa alleges that defendant J. Wehrwian subjected him to arbitrary cell searches on April 21, 2005 and June 9, 2005.  Plaintiff claims that the second cell search was in retaliation for filing a grievance against Wehrwian.  (Compl., ¶ 53).

Claims Against NJSPB Defendants

Next, Kwanzaa alleges claims against the New Jersey State Parole Board ("NJSPB") defendants, Chairman D'Amico, M. Dowling, and E. Oskay, for refusing to be "impartial fact finders" in plaintiff's parole eligibility hearings and for arbitrarily failing to provide plaintiff with timely parole hearings before his parole eligibility dates on three separate occasions. Specifically, Kwanzaa alleges that he was supposed to have a parole hearing before January 2003, which was not held until April 28, 2005.  This was Kwanzaa's third parole eligibility hearing, and he claims that he was denied parole for the third time for "made up factors", and a third future eligibility term

13

("FET") was issued.  Kwanzaa also argues that he was arbitrarily denied parole based on his medical disability, which the NJSPB determined was a "risk assessment".  Plaintiff claims that he filed an appeal with the state appellate court, and that matter is currently pending.  (Compl., ¶¶ 54-57).

Claims Against CMS Defendants

Finally, Kwanzaa asserts claims against the Correctional Medical Services ("CMS") defendants, Dr. F. Green, Dr. Sha, and Nurses S. Kudla, R. Kuhn, T. Pipitone, and Hollenbeck.  He alleges that these defendants, since March 17, 2005, have violated his privacy rights by talking about his medical information in open examination rooms with correctional officers working in the area.  He also contends that the defendants have arbitrarily denied plaintiff his cane and other medical devices (medical boots, back, leg and arm braces, and an egg crate or double mattress) allegedly prescribed by "specialists". Defendants have also discontinued his pain medications (Darvocet), allegedly prescribed by "specialists", and charge plaintiff for medications, such as nasal spray, and fail to issue them to him.  (Compl., ¶¶ 58-59).

On March 18, 2005, T. Pipitone and Dr. Hellander advised correctional officers to place Kwanzaa on an upper level floor in detention with his cane, after Kwanzaa was returned to prison from being treated in a hospital for an asthma attack.  Kwanzaa

14

alleges that he had medical orders and his medical file shows that an upper level assignment was medically restricted.  He also alleges that defendants arbitrarily refused to provide him with eyeglasses for seven months, resulting in poorer eyesight and a stronger eyeglass prescription.  Kwanzaa claims that he has been denied 90 day blood lab tests.  He further alleges that Nurse Hollenbeck put a medical request slip for a throat specialist on an officer's desk, violating his right to privacy.  Finally, Kwanzaa alleges that after he had complained about the violations of his privacy rights respecting medical information, his medical restrictions were deleted from the computer, and changed from "no prolonged standing" to "15 minute standing".  (Compl., ¶ 59).

Kwanzaa seeks money damages in excess of $1 million, and injunctive relief, restraining defendants from further violations of his constitutional rights.  (Compl., at pp. 16-17).

II.  **STANDARDS FOR A SUA SPONTE DISMISSAL**

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a

defendant who is immune from such relief.  28 U.S.C. §§
1915(e)(2)(B) and 1915A.[6]

In determining the sufficiency of a pro se complaint, the
Court must be mindful to construe it liberally in favor of the
plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United
States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must
assume the truth of the allegations in the complaint and all
reasonable inferences that can be drawn therefrom, and view them
in the light most favorable to the plaintiffs.  Gibson v.
Superintendent of N.J. Dep't of Law & Pub. Safety-Division, 411
F.3d 427, 431 (3d Cir. 2005).  The Court need not, however,
credit a pro se plaintiff's "bald assertions" or "legal
conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis
either in law or in fact."  Neitzke v. Williams, 490 U.S. 319,
325 (1989) (interpreting the predecessor of § 1915(e)(2), the
former § 1915(d)).  The standard for evaluating whether a

---

[6]  Plaintiff should also be aware that the PLRA requires
Courts to determine whether a prisoner has, on three or more
prior occasions while incarcerated or detained in any facility,
brought an action or appeal in federal court that was dismissed
as frivolous, malicious, or for failure to state a claim upon
which relief may be granted.  If so, the prisoner is precluded
from bringing an action in forma pauperis unless he or she is
under imminent danger of serious physical injury.  28 U.S.C. §
1915(g).  It appears that plaintiff has not incurred any strikes
under 28 U.S.C. § 1915(g).

16

complaint is "frivolous" is an objective one.  Deutsch v. United
States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a
claim only if it appears "'beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle
him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v.
Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d
371, 373 (3d Cir. 1981).  However, where a complaint can be
remedied by an amendment, a district court may not dismiss the
complaint with prejudice, but must permit the amendment.  Denton
v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d
229 (3d Cir. 2004)(complaint that satisfied notice pleading
requirement that it contain short, plain statement of the claim
but lacked sufficient detail to function as a guide to discovery
was not required to be dismissed for failure to state a claim;
district court should permit a curative amendment before
dismissing a complaint, unless an amendment would be futile or
inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103,
108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C.
§ 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir.
2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v.
Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).
A complaint that sets forth facts which affirmatively demonstrate

that the plaintiff has no right to recover is properly dismissed without leave to amend.  Grayson, 293 F.3d at 106.

### III.   SECTION 1983 LIABILITY

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Moreover, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations

18

omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286,
1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-
91 (3d Cir. 1995).

## IV.  **ANALYSIS**

Kwanzaa asserts that the many acts of the defendants violate
his constitutional rights.  In particular, he alleges that
defendants violated his First, Fourth, Fifth, Sixth, Eighth, and
Fourteenth Amendment rights.  The Court liberally construes the
allegations in the complaint as falling within one of the
following categories: (1) numerous claims of retaliation, in
violation of the First Amendment, for filing grievances and court
actions against defendants; (2) denial of access to the courts in
violation of the First, Sixth, and Fourteenth Amendment; (3)
denial of medical care in violation of the Eighth Amendment; (4)
denial of disciplinary due process in violation of the Eighth and
Fourteenth Amendments; (5) filing of false disciplinary charges;
(6) unlawful cell searches in violation of the Fourth Amendment;
(7) restoration of commutation credits claim; (8) denial of
parole eligibility claim; (9) violation of his privacy rights
regarding medical information; (10) disciplinary transfer to
another prison; (10) denial of religious services; (11) excessive
force in violation of the Eighth Amendment; and (12) interference
with the mail in violation of the First Amendment.

19

A.   <u>Interference with Mail Claim</u>

First, this Court addresses Kwanzaa's claim that there has been interference with his outgoing mail.  In particular, he alleges that, on October 27, 2005, defendant McDowell "tampered" with plaintiff's mail, which caused Kwanzaa to file his appeal <u>nunc</u> <u>pro</u> <u>tunc</u>.  He also generally alleges that the BSP and SWSP do not have a policy that allows inmates mail receipts for outgoing legal mail.

Inmates have a limited liberty interest in their mail under the First and Fourteenth Amendments; thus, an inmate's constitutional right to send and receive mail may be restricted only for legitimate penological interests.  <u>See</u> <u>Thornburgh v.</u> <u>Abbott</u>, 490 U.S. 401, 407 (1989); <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987).  A single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation.  <u>Morgan v. Montayne</u>, 516 F.2d 1367 (2d Cir. 1975), <u>cert</u>. <u>denied</u>, 424 U.S. 973 (1976).

Here, Kwanzaa alleges only one incident of mail interference by one of the defendants.  As mentioned above, one incident without more is insufficient to support a claim of constitutional dimension.  <u>Morgan</u>, <u>supra</u>.  Moreover, as to the lack of policy allowing mail receipts for outgoing mail, Kwanzaa alleges no facts to show that this policy actually hindered or interfered with his outgoing mail to support a claim of constitutional

20

deprivation.   Therefore, this claim will be dismissed for failure
to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and
1915A(b)(1).

B.   Denial of Court Access

Kwanzaa next complains that the defendants have denied him
access to the courts on numerous occasions and have restricted
his access to the law library.   The constitutional right of
access to the courts is an aspect of the First Amendment right to
petition the government for redress of grievances.   Bill
Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983).
In addition, the constitutional guarantee of due process of law
has as a corollary the requirement that prisoners be afforded
access to the courts in order to challenge unlawful convictions
and to seek redress for violations of their constitutional
rights.   Procunier v. Martinez, 416 U.S. 396, 419 (1974),
overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401,
413-14 (1989).   See also Peterkin v. Jeffes, 855 F.2d 1021, 1036
n.18 (3d Cir. 1988) (chronicling various constitutional sources
of the right of access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme
Court held that "the fundamental constitutional right of access
to the courts requires prison authorities to assist inmates in
the preparation and filing of meaningful legal papers by
providing prisoners with adequate law libraries or adequate

21

assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original).  Similarly, a pretrial detainee has a right of access to the courts with respect to legal assistance and participation in one's own defense against pending criminal charges.  See, e.g., May v. Sheahan, 226 F.3d 876, 883-84 (7th Cir. 2000); Caldwell v. Hall, 2000 WL 343229 (E.D. Pa. March 31, 2000).  But see United States v. Byrd, 208 F.3d 592, 593 (7th Cir. 2000) (pretrial detainee who rejects an offer of court-appointed counsel in satisfaction of the Sixth Amendment right to counsel has no alternative right to access to a law library); Wilson v. Blankenship, 163 F.3d 1284, 1290-91 (11th Cir. 1998) (same); United States v. Walker, 129 F.3d 1266, 1997 WL 720385, **4 (6th Cir. 1997) (same).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  See Lewis, 518 U.S. at 348-51, 354-55

22

(1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).
"He might show, for example, that a complaint he prepared was
dismissed for failure to satisfy some technical requirement
which, because of deficiencies in the prison's legal assistance
facilities, he could not have known.  Or that he had suffered
arguably actionable harm that he wished to bring before the
courts, but was so stymied by inadequacies of the law library
that he was unable to file even a complaint."  Lewis, 518 U.S. at
351.

Here, Kwanzaa fails to allege any actual injury as a result
of wrongful actions by the defendants.  By his own pleadings,
plaintiff admits that he was not hindered in filing the numerous
grievances that he said he did and that he was able to file this
Complaint, as well as an earlier federal court action and a
pending state court action and state court appeals without any
allegations that his efforts to do so were encumbered in any way.
Therefore, this claim will be dismissed without prejudice.

Kwanzaa does allege one occasion where his state court
appeal was apparently dismissed as untimely filed.  This event
occurred during the period of time from May 2002 to December 9,
2002.  Kwanzaa did not file this action until December 28, 2005,
more than three years later.  Thus, the claim is untimely and
should be dismissed for the reasons below.

A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted). Although the statute of limitations is an affirmative defense which may be waived by the defendant, it is appropriate to dismiss sua sponte under 28 U.S.C. § 1915(e)(2) a pro se civil rights claim whose untimeliness is apparent from the face of the Complaint. See, e.g., Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) (holding, under former § 1915(d) in forma pauperis provisions, that sua sponte dismissal prior to service of an untimely claim is appropriate since such a claim "is based on an indisputably meritless legal theory"); Hall v. Geary County Bd. of County Comm'rs, 2001 WL 694082 (10th Cir. June 12, 2001) (unpub.) (applying Pino to current § 1915(e)); Rounds v. Baker, 141 F.3d 1170 (8th Cir. 1998)(unpub.); Johnstone v. United States, 980 F.Supp. 148 (E.D. Pa. 1997) (applying Pino to current § 1915(e)). The requirements of 28 U.S.C. § 1915A (governing civil actions in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity) and 42 U.S.C. § 1997e (governing actions brought with respect to prison conditions) that federal courts review and

24

dismiss any complaint that fails to state a claim parallels the provision in 28 U.S.C. § 1915(e).

Civil rights claims, like those presented here, are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions. See Wilson v. Garcia, 471 U.S. 261, 280 (1985). Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann. § 2A:14-2, governs plaintiff's claims. See Montgomery v. DeSimone, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir. 1989). Under N.J. Stat. Ann. § 2A:14-2, an action for an injury to the person caused by a wrongful act, neglect, or default must be commenced within two years of accrual of the cause of action. Cito, 892 F.2d at 25; accord Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987). Unless their full application would defeat the goals of the federal statute at issue, courts should not unravel states' interrelated limitations provisions regarding tolling, revival, and questions of application. Wilson v. Garcia, 471 U.S. at 269.

New Jersey statutes set forth certain bases for "statutory tolling." See, e.g., N.J.S.A. § 2A:14-21 (detailing tolling because of minority or insanity); N.J.S.A. § 2A 14-22 (detailing tolling because of nonresidency of persons liable). New Jersey law permits "equitable tolling" where "the complainant

25

has been induced or tricked by his adversary's misconduct into
allowing the filing deadline to pass," or where a plaintiff has
"in some extraordinary way" been prevented from asserting his
rights, or where a plaintiff has timely asserted his rights
mistakenly by either defective pleading or in the wrong forum.
See Freeman v. State, 347 N.J. Super. 11, 31 (citations omitted),
certif. denied, 172 N.J. 178 (2002).  "However, absent a showing
of intentional inducement or trickery by a defendant, the
doctrine of equitable tolling should be applied sparingly and
only in the rare situation where it is demanded by sound legal
principles as well as the interests of justice."  Id.

When state tolling rules contradict federal law or policy,
in certain limited circumstances, federal courts can turn to
federal tolling doctrine.  See Lake v. Arnold, 232 F.3d 360, 370
(3d Cir. 2000).  Under federal law, equitable tolling is
appropriate in three general scenarios:

> (1) where a defendant actively misleads a plaintiff
> with respect to her cause of action; (2) where the
> plaintiff has been prevented from asserting her claim
> as a result of other extraordinary circumstances; or
> (3) where the plaintiff asserts her claims in a timely
> manner but has done so in the wrong forum.

Id. n.9.

The access to courts claim asserted here accrued on December
9, 2002, when the alleged actual injury occurred, *i.e.*, dismissal

of plaintiff's appeal.[7]  This Complaint is dated on or about December 9, 2005, and was received by the Clerk's Office on or about December 28, 2005, at least one year after the two-year statute of limitations expired on December 9, 2004.  Kwanzaa alleges no facts or extraordinary circumstances that would permit statutory or equitable tolling under either New Jersey or federal law.[8]  Thus, this denial of court access claim is time-barred and will be dismissed with prejudice.

C.   Denial of Medical Care

The Complaint also alleges that Kwanzaa was denied medical care, in violation of the Eighth Amendment, by a refusal to comply with medical orders directing that Kwanzaa be housed on the first floor, that he be allowed to ambulate with a cane, and

---

[7] A claim accrues as soon as the injured party "knew or had reason to know of the injury that constitutes the basis of this action."  Oshiver v. Levin Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994).  "Plaintiff's actual knowledge is irrelevant.  Rather, the question is whether the knowledge was known, or through reasonable diligence, knowable.  Moreover, the claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong."  Fassnacht v. United States, 1996 WL 41621 (E.D. Pa. Feb. 2, 1996) (citing Oshiver, 38 F.3d at 1386).

[8] The Court acknowledges there are allegations of retaliation and disciplinary detention that Kwanzaa contends hindered him from legal access.  However, there are no allegations that Kwanzaa was actually prevented from filing a complaint in federal court before December 9, 2004.  In fact, Kwanzaa admits that he has filed state and federal court actions as well as administrative grievances and appeals during this time and beyond.  Therefore, equitable tolling of the limitations period is not warranted here.

that he be allowed use of medically prescribed devices, such as medical boots, back, leg and arm braces, an egg crate mattress, and a cane.  Further, defendants denied plaintiff prescription eyeglasses for seven months causing his eyesight to worsen. Kwanzaa also complains that he has been denied 90 day blood lab tests.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege:  (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Estelle, 429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring

treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003)(internal quotations and citations omitted); see also Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir.

29

1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation.  Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment.  See Rouse, 182 F.3d at 197.  The court has also held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment.  Atkinson, 316 F.3d at 266.  See also Monmouth County Correctional Institutional Inmates, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); Durmer v.

30

<u>O'Carroll</u>, 991 F.2d 64 (3d Cir. 1993); <u>White v. Napoleon</u>, 897 F.2d 103 (3d Cir. 1990).

Here, Kwanzaa has alleged that the medical devices either confiscated from him or denied to him were medically prescribed. He also alleges that defendants have not complied with medical orders concerning his ambulation with a cane and housing on the first level, and not standing for a prolonged period of time. Thus, these allegations may support a claim that defendants have deliberately ignored or denied prescribed treatment. The fact that these devices were prescribed by doctors, if true, is sufficient at this stage to demonstrate a serious medical need. Therefore, the Court will allow this claim to proceed.

While the medical claims are most applicable to the CMS defendants, Kwanzaa also asserts an Eighth Amendment denial of medical care claim against numerous administrative and correctional staff. In particular, he alleges that defendant Knowles refused to comply with medical orders when he denied plaintiff's cane and first floor housing (Compl., ¶ 29); that defendant Sherrer denied plaintiff use of his medically prescribed cane while in administrative segregation (Compl., ¶ 30); and that defendant MacFarland denied plaintiff medication, back, leg and arm braces, medical boots, and an egg crate mattress, all of which were allegedly prescribed to him, while

plaintiff was in detention.[9]  However, any denial of medical care
claim asserted against the EJSP defendants will be dismissed as
time-barred because the statute of limitations expired at least
in April 2004, two years after plaintiff left EJSP, and plaintiff
did not file his Complaint until December 2005.  (Compl., ¶ 38).
Moreover, any such claim alleged against defendant Commissioner
Brown will be dismissed because there are no facts alleged to
show that Brown had any personal involvement, knowledge, or
acquiescence in these medical access and device restrictions
other than that based on a claim of supervisor liability, which
is not cognizable in a § 1983 action.  See this Opinion, supra,
at pp. 18-19).

D.  Excessive Force Claim

     In his Complaint, Kwanzaa alleges that defendants, SCO
Crenny at BSP and Sgt. J. Dice at SWSP, assaulted plaintiff on or
about February 3, 2005 and March 17, 2005, respectively.
(Compl., ¶¶ 32-33, 52).  Crenny allegedly assaulted plaintiff
while he was being escorted to detention.  Dice purportedly
assaulted Kwanzaa by kicking him while he was having an asthma
attack.  Kwanzaa does not allege any injuries from these alleged

---

     [9]  To the extent that these restrictions on medical devices
were based on legitimate penological interests regarding security
issues in administrative segregation or detention status, the
matter is better addressed by the defendants as an affirmative
defense, rather than on a sua sponte dismissal by the Court.

attacks.  He states that defendants' actions constitute excessive force and cruel and unusual punishment in violation of the Eighth Amendment.

Excessive force cases fall into three categories:  (1) those involving the use of force to effectuate an arrest; (2) those against a person in police custody and/or pretrial detention; and (3) those involving the use of force against a convicted person. Graham v. Connor, 490 U.S. 386, 394 (1989).  The Fourth Amendment standard is applied to those cases specifically directed to the method of arrest and seizure.  Custody and detention cases are subject to the Fourteenth Amendment substantive due process analysis; and cases involving the use of force against convicted individuals are examined under the Eighth Amendment's proscription against cruel and unusual punishment.  Id. at 392-394.  As a convicted prisoner at the time of the incident, Kwanzaa's excessive force claim is examined under the Eighth Amendment standard.

"The Eighth Amendment, in only three words, imposes the constitutional limitation upon punishments:  they cannot be 'cruel and unusual.'"  Rhodes v. Chapman, 452 U.S. 337, 345 (1981).  The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment.  Id. at 347.  The cruel and unusual punishment

33

standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society." Id. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1956)). To state a claim under the Eighth Amendment, an inmate must satisfy an objective element and a subjective element. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

The objective element questions whether the deprivation of a basic human need is sufficiently serious; the subjective component asks whether the officials acted with a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component is contextual and responsive to "'contemporary standards of decency.'" Hudson v. McMillian, 503 U.S. 1, 8 (1992). The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" See Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); Rhodes, 452 U.S. at 345. What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation. Hudson, 503 U.S. at 5.

Where the claim is one of excessive use of force, the core inquiry as to the subjective component is that set out in Whitley v. Albers, 475 U.S. 312, 320-21 (1986)(citation omitted): "'whether force was applied in a good faith effort to maintain or

34

restore discipline or maliciously and sadistically for the very purpose of causing harm.'"  Quoted in Hudson, 503 U.S. at 6. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated."  Id. at 9.  In such cases, a prisoner may prevail on an Eighth Amendment claim even in the absence of a serious injury, the objective component, so long as there is some pain or injury and something more than de minimis force is used.  Id. at 9-10 (finding that blows which caused bruises, swelling, loosened teeth, and a cracked dental plate were not de minimis for Eighth Amendment purposes).

To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including:

> (1) "the need of the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. at 321).  Thus, not all use of force is "excessive" and will give rise to the level of a constitutional violation.  See Hudson, 503 U.S. at 9 (it is clear that not "every malevolent touch by a prison guard gives rise to a federal cause of action").  Therefore, "[n]ot every push or

35

shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Id. at 9-10.

Here, Kwanzaa alleges that defendants Crenny and Dice assaulted him, but does not assert that he sustained any injury, serious or otherwise.  However, the extent of Kwanzaa's injuries, even if the injuries are de minimis, do not drive the Eighth Amendment analysis.  See Smith v. Mensinger, 293 F.3d 641, 648 (3d Cir. 2002).  Instead, "the Eighth Amendment analysis must be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries." Id.  Thus, the pivotal inquiry in reviewing an excessive force claim is whether the force was applied maliciously and sadistically to cause harm. Id., 293 F.3d at 649; Brooks, 204 F.3d at 106.  Otherwise, an inmate "could constitutionally be attacked for the sole purpose of causing pain as long as the blows were inflicted in a manner that resulted" in injuries that were de minimis.  Id.

Kwanzaa also alleges that defendant Dice attacked and kicked him while he was having an asthma attack.  This allegation tends to suggest malicious and sadistic conduct intended to cause pain. Such conduct, if true, is "repugnant to the conscience of mankind" absent extraordinary circumstances necessary to justify

36

that kind of force.  Hudson, 503 U.S. at 10.  Therefore, the Court will allow this claim to proceed at this time.[10]

E.  Unlawful Cell Searches

Kwanzaa also asserts that defendants, SCO Caldwell at BSP and SCO J. Wehrwian at SWSP, violated his Fourth and Eighth Amendment rights by subjecting him to unlawful cell searches without reason except to harass him and retaliate against him for filing grievances.  These searches occurred on January 27, 2005, February 2, 2005, April 21, 2005, and June 9, 2005.

A prisoner does not have a reasonable expectation of privacy in his prison cell and therefore "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."  Hudson v. Palmer, 468 U.S. 517, 526 (1984).  Random searches of inmates and their cells are necessary to ensure the security of the institution and the safety of inmates and all others within its boundaries.  Id. at 529.  However, searches conducted as "calculated harassment unrelated to prison needs" may violate the Eighth Amendment.  Id. at 530; see also Prisoners' Legal Ass'n v. Roberson, 822 F. Supp.

---

[10]  While Kwanzaa does not articulate any injury sustained by him, it is likely that he may be able to do so by amendment of his complaint.  Further, the Court notes that the excessive force claim against Crenny does not assert the egregious conduct as alleged against defendant Dice.  Rather than dismiss the excessive force claim against defendant Crenny, the Court will allow Kwanzaa time to amend his Complaint to assert those facts necessary to support an Eighth Amendment excessive force claim, consistent with this Court's Opinion.

185, 189 (D.N.J. 1993).  Numerous searches conducted within a
short period of time may suggest intent to harass an inmate.  See
Scher v. Engelke, 943 F.2d 921, 923-24 (8th Cir. 1991) (finding
that ten searches of an inmate's cell within a nineteen-day
period constituted "cruel and unusual punishment"), cert. denied,
503 U.S. 952 (1992).  However, repetitive searches which may seem
to be harassment to the inmate do not violate the Eighth
Amendment if each search is conducted for a legitimate purpose.
See Proudfoot v. Williams, 803 F. Supp. 1048 (E.D. Pa. 1992)
(finding that three searches within fourteen days did not violate
Eighth Amendment when each search was made for a legitimate
purpose).

Here, Kwanzaa has sufficiently alleged facts that claim the
searches of his cell, although not so numerous or repetitive
within a short period of time, were conducted solely for the
purpose of harassing him and retaliating against him for filing
grievances.  Thus, if the allegations are accepted as true at
this preliminary stage, it would appear that the four searches
may have been undertaken as a form of harassment and retaliation
unrelated to prison needs.  Accordingly, this Eighth Amendment
claim will be allowed to proceed at this time.[11]

_____

[11]  While Kwanzaa may recover damages for the violation of
his Eighth Amendment rights, he may not recover damages for
mental or emotional injury without a prior showing of physical
injury.  See 28 U.S.C.A. § 1346(b)(2); 42 U.S.C. § 1997e(e).
Moreover, verbal harassment, without more, does not state a

F.  <u>Retaliation Claims</u>

The main thrust of Kwanzaa's Complaint is that the actions taken by the defendants against him have been retaliatory in intent and nature because Kwanzaa has filed grievances and court actions against many of the defendants.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution ... ."  <u>White v. Napoleon</u>, 897 F.2d 103, 111-12 (3d Cir. 1990).  To prevail on a retaliation claim, plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.  <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001) (quoting <u>Allah v. Seiverling</u>, 229 F.3d 220, 225 (3d Cir. 2000)).  <u>See also</u> <u>Anderson v. Davila</u>, 125 F.3d 148, 160 (3d Cir. 1997) (citing <u>Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274 (1977)); <u>Thaddeus-X v.</u>

---

cognizable claim of constitutional dimension.  <u>See</u> <u>McBride v. Deer</u>, 240 F.3d 1287, 1291 (10th Cir. 2001)(taunts and threats are not an Eighth Amendment violation); <u>Oltarzewski v. Ruggiero</u>, 830 F.2d 136 (9th Cir. 1987); <u>Rivera v. Goord</u>, 119 F. Supp.2d 327, 342 (S.D.N.Y. 2000)(verbal harassment does not violate inmate's constitutional rights); <u>Prisoners' Legal Ass'n v. Roberson</u>, 822 F. Supp. 185 (D.N.J. 1993); <u>Murray v. Woodburn</u>, 809 F. Supp. 383 (E.D. Pa. 1993); <u>Douglas v. Marino</u>, 684 F. Supp. 395 (D.N.J. 1988).

Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with
approval in Allah, 229 F.3d at 225.

Here, Kwanzaa cites numerous instances where defendants
appear to have acted against him in a retaliatory manner for
filing grievances and/or court actions.  These instances include
prison disciplinary actions resulting in the loss of commutation
credits, contact visitation, prison status, and detention.
Kwanzaa also alleges that the retaliatory acts included cell
searches without reason, the confiscation of his medical devices,
denial of religious services, extended parole eligibility dates,
an arbitrary transfer to another prison, housing on an upper
level, invasion of his privacy with regard to open disclosure of
his medical information, and prolonged standing despite medical
restrictions.  While it is plain from plaintiff's admissions that
he was not actually deterred from seeking redress through the
administrative process in prison (in which he was unsuccessful)
and in state court (in which he was allegedly successful on at
least one occasion, with another action currently pending), and
now in federal court by filing this Complaint, he plainly alleges
that defendants used the above-mentioned threats, false
disciplinary charges,[12] detention, and other actions as a means to
prevent or intimidate Kwanzaa from pursuing his claims.  Threats,

---

[12]  Nevertheless, the act of filing false disciplinary
charges does not itself violate a prisoner's constitutional
rights.  See this Opinion, infra, at pp. 29-30.

the use of disciplinary action to suppress plaintiff's right to complain, isolation (as in detention or administrative segregation), and all of the incidental losses or denials of privileges as alleged by plaintiff may constitute impermissible retaliatory action in violation of Kwanzaa's First Amendment rights.  Therefore, based on these allegations, if true, Kwanzaa will be allowed to proceed on his retaliation claims against defendants Knowles, MacFarland, Sherrer, Caldwell, Ayers, Crenny, Eisinger, Dice, Jalloh and Sgt. McDowell, except that certain claims and defendants will be dismissed as follows:

In ¶ 29 of his Complaint, Kwanzaa alleges that defendant Knowles had plaintiff arbitrarily transferred to another prison. While claims of prison transfers are not typically cognizable in § 1983 prisoner litigation,[13] the Court nevertheless finds that

_____

[13]    An inmate generally does not have a liberty interest in assignment to a particular institution or to a particular security classification.  See Wilkinson v. Austin, 125 S.Ct. 2384, 2393 (2005)(the Constitution does not give rise to a liberty interest in avoiding transfers to more adverse conditions of confinement); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montayne v. Haymes, 427 U.S. 236, 243 (1976); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976)(noting that prison classification and eligibility for rehabilitative programs in the federal prison system are matters delegated by Congress to the "full discretion" of federal prison officials and thus implicate "no legitimate statutory or constitutional entitlement sufficient to invoke due process").  See also Sandin, 515 U.S. at 484-86 (holding that a liberty interest is implicated only where the action creates "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or creates a "major disruption in his environment").  Thus, the placement of prisoners within a prison system is among the "wide spectrum of discretionary

the claim is time-barred, since the transfer occurred in December 2002, and plaintiff did not file his Complaint until December 2005, a year after the statute of limitations had already expired. The other claims of retaliatory acts committed by Knowles (*i.e.*, placing Kwanzaa in detention and keeping him in administrative segregation) appear timely since plaintiff alleges that these acts continued up until March 17, 2004.

In addition, all claims against the EJSP defendants will be dismissed as time-barred because the alleged retaliatory acts occurred in 1999 through 2002. (Compl., ¶¶ 35-38).

G.   Denial of Religious Services

Next, Kwanzaa alleges that, on September 16, 2005, defendant Sgt. McDowell would not allow plaintiff to attend Ju'mah service, purportedly in retaliation for plaintiff having filed a grievance against the officer in 1999. Kwanzaa asserts that this is a violation of his First Amendment right to free religious exercise.

To establish a violation of his right to freely exercise his religion, an inmate must satisfy the "reasonableness test" set forth in Turner v. Safley, 482 U.S. 78, 89 (1987), and O'Lone v.

---

actions that traditionally have been the business of prison administrators rather than of the federal courts." Id., 427 U.S. at 225. However, to the extent that Kwanzaa alleges that a prison transfer was ordered by defendant Sherrer as an act of pure retaliation for filing grievances and not as a discretionary administrative decision (¶ 30 of the Complaint), the Court will allow this claim to proceed against Sherrer at this time.

Estate of Shabazz, 482 U.S. 342, 349 (1987).  The standards delineated in Turner and O'Lone indicate that when a prison regulation encroaches upon prisoners' rights to free exercise of their religion, the regulation is valid if it is reasonably related to a legitimate penological interest.  See Turner, 482 U.S. at 89; O'Lone, 482 U.S. at 349.  Thus, plaintiff must allege that the restrictions on his religious practices are not reasonably related to the prison's legitimate penological interest.  See Robinson v. Ridge, 996 F. Supp. 447, 450 (E.D. Pa. 1997), aff'd, 175 F.3d 1011 (3d Cir. 1999).

The reasonableness standard involves the examination of the following four factors:  (1) whether the regulation or practice in question furthers a legitimate governmental interest unrelated to the suppression of expression; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety for guards and other prisoners; and (4) whether an alternative exists which would fully accommodate the prisoners' rights at de minimis cost to valid penological interests.  See Thornburgh v. Abbott, 490 U.S. 401, 415-18 (1989); Turner, 482 U.S. at 89-91.

In this case, Kwanzaa's basic allegations may be sufficient to state a First Amendment free exercise claim.  There does not appear to be any facially legitimate reason to restrict

43

plaintiff's access to Ju'mah services, other than the fact that
Kwanzaa may have been in detention or administrative segregation
at the time.  Kwanzaa alleges only one incident, but he plainly
states that the denial was retaliatory.  Accordingly, the Court
will allow this claim to proceed at this preliminary stage.

H.   Denial of Disciplinary Due Process Claims

Kwanzaa next alleges that he has been denied disciplinary
due process.  To a large extent, Kwanzaa claims that he was not
afforded his basic due process rights with respect to the
disciplinary charges lodged against him.  In particular, he
alleges that defendant K. Ireland violated his right to
procedural due process because plaintiff was not allowed the
right to cross-examine and confront witnesses, or present video
and documentary evidence in his disciplinary proceedings in March
2005.[14]

To support this denial of procedural due process claim,
Kwanzaa must demonstrate that the procedures afforded him fell
short of the requirements enunciated in Wolff v. McDonnell, 418

_____

[14]   Kwanzaa also asserts this claim against defendants Gary
Sheppard and L. Meehan with respect to proceedings that took
place in August 1999, March 2001, and April 2002.  The Complaint
will be dismissed in its entirety as to these defendants because
the claims are now time-barred.  The latest statute of
limitations ran in April 2004, and plaintiff did not file his
Complaint for more than a year after the limitations period had
expired.

U.S. 539 (1974).[15]  Jackson v. Johnson, 15 F. Supp.2d 341, 351

(S.D.N.Y. 1998).  See Sandin, 515 U.S. at 487.

In Wolff v. McDonnell, the Supreme Court set forth the

requirements of due process in prison disciplinary hearings.  An

inmate is entitled to (1) written notice of the charges and no

less than 24 hours to marshal the facts and prepare a defense for

an appearance at the disciplinary hearing; (2) a written

statement by the fact finder as to the evidence relied on and the

reasons for the disciplinary action; and (3) an opportunity "to

call witnesses and present documentary evidence in his defense

when to do so will not be unduly hazardous to institutional

safety or correctional goals."  Wolff, 418 U.S. at 563-71.

However, inmates do not have an absolute federal

constitutionally-protected right to confront and cross-examine

witnesses at their prison disciplinary hearings.  Id. at 567-68.

See also Baxter v. Palmigiano, 425 U.S. 308, 321-22 (1976); Young

v. Kann, 926 F.2d 1396, 1404 (3d Cir. 1991); Sanchez v. Roth, 891

F. Supp. 452, 458-59 (N.D.Ill.1995); Harrison v. Pyle, 612 F.

Supp. 850, 854-55 (D. Nev. 1985).  Thus, in this instance, to the

extent that Kwanzaa alleges that he was denied the ability to

---

[15]  In Wolff, the Supreme Court held that, while prisoners
retain certain basic constitutional rights, including procedural
due process protections, prison disciplinary hearings are not
part of criminal prosecution, and an inmate's rights at such
hearings may be curtailed by the demands and realities of the
prison environment.  Id. at 556-57; Young v. Kann, 926 F.2d 1396,
1399 (3d Cir. 1991).

confront the witnesses against him at the disciplinary hearings, he has failed to state a cognizable § 1983 claim under Wolff.

Generally, a prisoner plaintiff may bring an § 1983 action for money damages stemming from an alleged denial of procedural due process, if the procedural protection is cognizable in a § 1983 claim.  See Wolff, supra; Henry v. Sanchez, 923 F. Supp. 1266, 1270 (C.D. Calif. 1996).  In Wolff, the Supreme Court held that, although claims for injunctive relief were barred by Preiser v. Rodriguez, 411 U.S. 475 (1973), plaintiffs were allowed to bring a damage claim because the claim was based on "damages for the deprivation of civil rights resulting from the use of the allegedly unconstitutional procedure." Sanchez, 923 F. Supp. at 1270.  In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court reaffirmed this principle, stating that Wolff "recognized a Section 1983 claim for using the wrong procedures, not for reaching the wrong result. ... Thus, the claim at issue in Wolff did not call into question the lawfulness of plaintiff's continuing confinement." Heck, 512 U.S. at 482-83.  However, where this Court has determined that the Complaint fails to allege a cognizable claim that Kwanzaa was denied disciplinary due process, he is not entitled to damages.[16]

---

[16]   A plaintiff who brings a successful § 1983 action based on a due process violation may be entitled to nominal damages even if there is no proof of actual injury.  Carey v. Piphus, 435 U.S. 247, 266-67 (1978).  Here, Kwanzaa is not entitled to even nominal damages because the Court has determined that he does not

Therefore, this claim against defendant Ireland based on denial of disciplinary due process protections is not cognizable under § 1983 and it will be dismissed for failure to state a claim.

Next, it appears that Kwanzaa also may be asserting that his confinement in administrative segregation and detention on different occasions violated due process.  Procedural due process rights are triggered by a deprivation of a legally cognizable liberty interest.[17]  For a prisoner like Kwanzaa, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).  Lesser restraints on an inmate's freedom are deemed to fall "within the expected parameters of the sentence imposed by a court of law." Id.  Thus, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted

---

have a cognizable § 1983 claim for denial of due process with respect to the inability to confront and cross-examine adverse witnesses.

[17] The Due Process Clause of the Fourteenth Amendment provides that no State may "deprive any person of life, liberty, or property, without due process of law."

in <u>Sandin</u>, 515 U.S. at 480.  <u>See also Asquith</u>, 186 F.3d at 410-11
(no liberty interest under the Due Process Clause in remaining in
halfway house).  Here, Kwanzaa's multiple disciplinary
segregation for short periods of time, even if due to alleged
false disciplinary actions, did not trigger the protections of
the Due Process Clause.  <u>See Sandin</u>, 515 U.S. at 484-486.

The Third Circuit has observed, however, that if an inmate
is committed to undesirable conditions for an atypical period of
time in violation of state law, that factor should be considered
in determining whether the prisoner has been subjected to
"atypical and significant hardship" triggering due process
protection.  <u>Griffin v. Vaughn</u>, 112 F.3d 703, 708-09 (3d Cir.
1997)(disciplinary segregation of state prisoner for 15 months
did not impose atypical and significant hardship on prisoner, and
thus, did not implicate the due process clause).  Again, the
Complaint fails to allege a claim of atypical or significant
hardship with respect to Kwanzaa's short periods of detention and
administrative segregation for disciplinary infractions.  Thus,
Kwanzaa fails to state a deprivation claim of constitutional
magnitude, and this due process claim will be dismissed, as
against all defendants, for failure to state a cognizable claim
under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

I.  <u>Filing of False Disciplinary Charges</u>

Kwanzaa also appears to suggest that the basis for the
disciplinary charges was to punish him in retaliation for
pursuing grievances and filing complaints against many of the
defendants.  In other words, Kwanzaa asserts that the charges
against him are false.  The act of filing false disciplinary
charges does not itself violate a prisoner's constitutional
rights.  See Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir.
1986)(holding that "the mere filing of [a false] charge itself"
does not constitute a cognizable claim under § 1983 so long as
the inmate "was granted a hearing, and had the opportunity to
rebut the unfounded or false charges"), cert. denied, 485 U.S.
982 (1988); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.
1984)(finding that so long as prison officials provide a prisoner
with the procedural requirements outlined in Wolff, 418 U.S. at
558, then the prisoner has not suffered a constitutional
violation).  See also Creter v. Arvonio, No. 92-4493, 1993 WL
306425, at *7 (D.N.J. Aug. 5, 1993); Duncan v. Neas, No. 86-109,
1988 WL 91571, at *1 (D.N.J. Aug. 30, 1988)(determining that "the
alleged knowing falsity of the charge [does not state] a claim of
deprivation of a constitutionally protected liberty interest ...
where procedural due process protections were provided).

Here, Kwanzaa does not state that he was denied a
disciplinary hearing.  Rather, he complains that he was not
allowed to confront or examine witnesses against him to prove his

innocence in the allegedly false charges.  As discussed above, a prisoner does not have a procedural due process right to confront witnesses against him at a prison disciplinary hearing.  <u>Wolff</u>, 418 U.S. at 567-68.

Thus, absent an allegation that he was denied a meaningful opportunity to contest the charges at a disciplinary hearing, any claim by Kwanzaa based on allegedly false disciplinary charges is not cognizable under § 1983.  Accordingly, this claim will be dismissed, as against all defendants for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

J.   Restoration of Commutation Credits and Denial of Parole

Next, the Complaint seeks to have Kwanzaa's commutation time restored and to fix his parole eligibility date, which would result in plaintiff's earlier release from prison.[18]  Kwanzaa also challenges the NJSPB decision to deny parole based on plaintiff's medical disability.  He admits that he has filed an appeal with the New Jersey Appellate Division respecting the parole decision, and that the appeal is still pending.  These claims are cognizable only in a habeas action after state court remedies have been exhausted.

There is no federal constitutional right to parole; states, however, may create a parole entitlement protected by the Due Process Clause.  See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979); Prevard v. Fauver, 47 F. Supp.2d 539, 545 (D.N.J.), aff'd, 202 F.3d 254 (3d Cir. 1999).

Both federal and state courts have held that the New Jersey parole statute contains language creating an expectation of parole eligibility entitled to some measure of due process protections.  See Williams v. New Jersey State Parole Board, 1992 WL 32329, *2 (D.N.J. Feb. 4, 1992), aff'd, 975 F.2d 1553 (3d Cir. 1992); New Jersey State Parole Board v. Byrne, 93 N.J. 192, 203 (1983).  Judge Lifland of this Court has held that these cases

---

[18]   While this claim pertains mostly to the NJSPB defendants, Kwanzaa also asserted this claim against defendants Brown and Blakesee.  (Compl., ¶¶ 25, 26).

remain good law even after taking into account the rule announced
by the Supreme Court in Sandin v. Conner, 515 U.S. 472, 484
(1995) (citation omitted), that liberty interests created by
state law "will be generally limited to freedom from restraint
which, while not exceeding the sentence in such an unexpected
manner as to give rise to protection by the Due Process Clause of
its own force, nonetheless imposes atypical and significant
hardship on the inmate in relation to the ordinary incidents of
prison life."  See Watson v. DiSabato, 933 F. Supp. 390, 392-93
(D.N.J. 1996) (prisoner has liberty interest in parole decisions,
including notice of determination, statement by the government,
and opportunity for prisoner to submit written response).

     The question remains what process is due.  The Supreme Court
of New Jersey has stated that

> Only a few basic procedures are required to deal with
> the risks of erroneous or arbitrary determinations in
> this context.  We conclude that the process required is
> notice of the pendency of the parole disposition, a
> statement by the objecting judge or prosecutor of the
> reasons why the punitive aspects of the sentence have
> not been fulfilled, and the opportunity for the
> prisoner to respond in writing to that statement of
> reasons.  No hearing, confrontation, or counsel issues
> are implicated here.

Byrne, 93 N.J. at 211.

     Judge Thompson of this Court has held that due process does
not require that a hearing be held in exact accordance with the
time period specified by the applicable New Jersey statutes.  See
Burgos v. New Jersey State Parole Board, 2000 WL 33722126, *8

(D.N.J. Aug. 7, 2000).  While delay for an extended period of time may violate a prisoner's due process rights, "procedural errors are generally cured by holding a new hearing in compliance with due process requirements."  <u>Id.</u> at *8-9.  <u>See also</u> <u>Johnson</u> <u>v. Paparozzi</u>, 219 F. Supp.2d 635, 642 (D.N.J. 2002).

This is not to say that every allegation of constitutional violations in parole proceedings is the proper subject for an action under § 1983.  In a series of cases beginning with <u>Preiser</u> <u>v. Rodriquez</u>, 411 U.S. 475 (1973), the Supreme Court has analyzed the intersection of 42 U.S.C. § 1983 and the federal habeas corpus statute, 28 U.S.C. § 2254.  In <u>Preiser</u>, state prisoners who had been deprived of good-conduct-time credits by the New York State Department of Correctional Services as a result of disciplinary proceedings brought a § 1983 action seeking injunctive relief to compel restoration of the credits, which would have resulted in their immediate release.  411 U.S. at 476. The prisoners did not seek compensatory damages for the loss of their credits.  411 U.S. at 494.  The Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  <u>Id.</u> at 500.

In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the Court addressed a corollary question to that presented in <u>Preiser</u>, *i.e.*, whether a prisoner could challenge the constitutionality of his conviction in a suit for damages only under § 1983 (a form of relief not available through a habeas corpus proceeding).  The Court rejected § 1983 as a vehicle to challenge the lawfulness of a criminal judgment.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has <u>not</u> been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87 (footnote omitted).  The Court further instructed district courts, in determining whether a complaint states a claim under § 1983, to evaluate whether a favorable outcome would necessarily imply the invalidity of a criminal judgment.

> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will <u>not</u> demonstrate the invalidity of any outstanding criminal judgment against the

54

plaintiff, the action should be allowed to proceed, in
the absence of some other bar to the suit.

512 U.S. at 487 (footnotes omitted).  The Court held that "a
§ 1983 cause of action for damages attributable to an
unconstitutional conviction or sentence does not accrue until the
conviction or sentence has been invalidated."  Id. at 489-90.

Later, in Edwards v. Balisok, 510 U.S. 641 (1997), the
Supreme Court applied the lessons of Preiser and Heck to a state
prisoner action, seeking compensatory and punitive damages,
challenging the constitutionality of procedures used in a prison
disciplinary proceeding that resulted in the loss of good-time
credits, but not necessarily challenging the result and not
seeking the restoration of the good-time credits.  The Court
emphasized that such a claim is not cognizable under § 1983 if a
favorable outcome would necessarily imply the invalidity of the
challenged judgment, which in that case was the disciplinary
finding and punishment.  520 U.S. at 646-8.

Here, Kwanzaa disputes his parole eligibility date, the
decision to deny parole, and the loss of commutation credits.  In
essence, these claims challenge the duration of Kwanzaa's
imprisonment and seek an earlier release from prison.[19]

_____

[19]  Claims alleging a miscalculation of a parole eligibility
date are not cognizable in a § 1983 action.  See Benson v. New
Jersey State Parole Board, 947 F. Supp. 827 (D.N.J. 1996).  In
Benson, petitioner sought habeas and declaratory relief, as well
as punitive damages under § 1983, for allegations that he had
been denied a timely parole hearing, and that his parole

Accordingly, under Preiser, Kwanzaa's sole federal remedy is a writ of habeas corpus after exhaustion of state remedies.

The Complaint clearly indicates that Kwanzaa has not yet exhausted his state court remedies before proceeding with this action in federal district court.  Kwanzaa admits that he has a pending appeal on the denial of parole currently pending in state court.  Therefore, the claims challenging his parole eligibility date, denial of parole, and loss of commutation credits will be dismissed without prejudice.

Moreover, the action for damages is not cognizable pursuant to Heck and Benson.  Any decision in Kwanzaa's favor would necessarily entail a determination of plaintiff's proper initial parole eligibility date, imply the invalidity of the judgment or disciplinary findings that resulted in the loss of commutation credits and the denial of parole.  Therefore, the Complaint challenging the denial of parole, an extended parole eligibility date, and the loss of commutation credits, which seeks

--------

eligibility date had been miscalculated.  Id. at 828.  The court held that a declaratory judgment in Benson's favor would "necessarily entail a determination of Benson's proper initial parole eligibility date," which is, in effect, an attack on the duration of his confinement.  Id. at 832.  Since Benson ultimately sought an earlier parole eligibility date, the court ruled that his claims were reviewable by habeas petition only. See id. (citation omitted).

compensatory and punitive damages will be dismissed without
prejudice.[20]

K.   Right to Privacy Claim

     Finally, Kwanzaa complains about "open door" medical
examinations and the disclosure of private medical information by
correctional officers, alleging that this conduct by defendants
violates his right to privacy.  He asserts this claim against
defendants, Knowles, Sherrer, Ayers, MacFarland, Sgt. McDowell,
and the CMS defendants.[21]

     The Supreme Court has held that an individual has a
constitutional right to privacy which protects "the individual
interest in avoiding disclosure of personal matters."  Whalen v.
Roe, 429 U.S. 589, 599 (1977).  The question here is whether a
prisoner retains this constitutional right to privacy upon
incarceration.  While inmates do not shed all fundamental

---

[20]   The Court also notes that some of the claims seeking
restoration of commutation credits may be time-barred.  In
particular, the claims against defendants, Brown, Blakesee,
Sheppard and Meehan, seeking restoration of 390 days of
commutation credit involve an allegation that the disciplinary
action revoking these credits purported was reversed by the
Appellate Division on July 21, 2003, yet plaintiff did not file
this action until more than two years later, on or about December
28, 2005.

[21]   Kwanzaa also asserts this claim against the EJSP
defendants, but any claim against these defendants are time-
barred because the alleged violations occurred at the latest in
2002.  In addition, Kwanzaa makes a general claim against
defendant Commissioner Brown, but it is based only on supervisor
liability, which is not cognizable in a § 1983 action.

protections of the Constitution upon imprisonment, it is only those rights that are not inconsistent with their prison status or with legitimate penological objectives that will be protected. Wolff, 418 U.S. at 455.

The Third Circuit has recognized that the Due Process Clause of the Fourteenth Amendment protects an inmate's right to medical privacy, subject to legitimate penological interests. Doe v. Delie, 257 F.3d 309, 323 (3d Cir. 2001).  Thus, Kwanzaa's right to privacy in his medical information may have been violated by the practices alleged (i.e., the "open door" medical examinations in plaintiff's detention cell and the disclosure of his medical condition and medications to and by corrections officers), if these practices and disclosures are unrelated to any legitimate penological interests.  Id. 257 F.3d at 317-321.  Here, where the Complaint alleges facts that, if true, might show arbitrary disclosure of private medical information and open door medical examinations, Kwanzaa has stated a claim sufficient to withstand summary dismissal at this preliminary stage.

L.   Appointment of Counsel

In a separate application submitted with his Complaint, Kwanzaa seeks appointment of counsel in this action.  Indigent persons raising civil rights claims have no absolute constitutional right to counsel.  Parham v. Johnson, 126 F.3d

454, 456-57 (3d Cir. 1997).  In determining whether to appoint

counsel, a court should consider several factors:

> As a preliminary matter, the plaintiff's claim must
> have some merit in fact and law. ... If the district
> court determines that the plaintiff's claim has some
> merit, then the district court should consider the
> following factors:
>
> > (1) the plaintiff's ability to present his or her
> own case;
> > (2) the complexity of the legal issues;
> > (3) the degree to which factual investigation will
> be necessary and the ability of the plaintiff to pursue
> such investigation;
> > (4) the amount a case is likely to turn on
> credibility determinations;
> > (5) whether the case will require the testimony of
> expert witnesses;
> > (6) whether the plaintiff can attain and afford
> counsel on his own behalf.
>
> [Tabron v. Grace, 6 F.3d 147, 155-56, 157 n.5 (3d Cir.
> 1993), cert. denied, 510 U.S. 1196 (1994).]  This list
> of factors is not exhaustive, but instead should serve
> as a guide post for the district courts.
>
> > Correspondingly, courts should exercise care in
> appointing counsel because volunteer lawyer time is a
> precious commodity and should not be wasted on
> frivolous cases.  Id. at 157.

Parham, 126 F.3d at 457-58.

Analysis of these factors reveals that appointment of

counsel is not appropriate at this time.  In particular, the

Court finds that Kwanzaa is able to articulate the facts

supporting his claims, and that he is capable of presenting the

straightforward legal issues involved, especially with respect to

the overriding claim of retaliation.  Kwanzaa does not contend

that extensive investigation or discovery is necessary to enable him to present his claims at the time of trial, if the matter proceeds to that point.  The Court also finds that the claims, which are proceeding, are not extraordinary or too complex for plaintiff to prosecute.  Thus, it would appear that the only basis for Kwanzaa's request for pro bono counsel is his indigency and the fact that he is presently confined.  Consequently, on balance with the other determining factors as outlined above, the Court does not find sufficient grounds to grant plaintiff's application for appointment of counsel at this time.  Therefore, Kwanzaa's application for appointment of counsel will be denied without prejudice.  However, should this matter proceed to the point where extensive or difficult factual investigation and discovery will be needed to present his claims, or that expert testimony will be required, the Court will entertain a renewed application for appointment of counsel.

## V.  CONCLUSION

For the reasons stated above, the Court will dismiss the Complaint in its entirety, for failure to state a claim, as against defendants Brown, Blakesee, Sheppard, Meehan, and Ireland, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  In addition, the Court will dismiss the Complaint as time-barred as against all of the EJSP defendants, namely, S. Pinchak, T. Moore, R. Swatij, W. Wise, SCO Gervasi, SCO Godown,

SCO Petti, and Sgt. McWherter.  The Complaint will be dismissed without prejudice as against the NJSPB defendants, Chairman D'Amico, M. Dowling, and E. Oskay.  The following claims asserted in the Complaint will be dismissed with prejudice for failure to state a claim, namely, (1) interference with the mail claim; (2) the denial of access to courts claim involving the dismissal of his state court appeal on December 9, 2002; (3) the time-barred arbitrary transfer claim asserted against defendant Knowles; (4) the denial of due process claim; and (5) the false disciplinary charges claim.  The Court further concludes that the remaining denial of access to the courts claims should be dismissed without prejudice.  However, the Court will allow the following claims to proceed: (1) the denial of medical care claim; (2) unlawful cell searches claim; (3) retaliation claims; (4)denial of religious services claim; (5) violation of the right to medical privacy claim; and (6) the excessive force claim against defendant Dice.  As to the excessive force claim against defendant Crenny, it appears that Kwanzaa may be able to allege facts necessary to support an excessive force claim; accordingly, the Court will allow plaintiff the opportunity to amend his complaint consistent with this Court's Opinion within thirty days, subject to Fed.R.Civ.P. 15.[22]  See Denton v. Hernandez, 504 U.S. 25, 34

---

[22] Once an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless

(1992); <u>Alston v. Parker</u>, 363 F.3d 229 (3d Cir. 2004).  To the

extent that the claims proceeding may be the subject of a pending

state court action, which is not clear from  plaintiff's general

allegation, the Court will leave that issue (*i.e.*, whether the

state court action should be stayed pending resolution of the

federal constitutional claims in this Court, or whether these

claims have been fully adjudicated in state court and may be

subject to res judicata or claim preclusion bar) to be addressed

by the defendants when they answer the Complaint.  Finally,

plaintiff's request for appointment of counsel will be denied

without prejudice.  This case presents no circumstances that

would warrant the appointment.  An appropriate Order follows.


                          <u>S/Renée Marie Bumb</u>
                          RENÉE MARIE BUMB
                          United States District Judge

DATED: August 17, 2006


---

the relevant portion is specifically incorporated in the new
[complaint]."  6 Wright, Miller & Kane, <u>Federal Practice and
Procedure:  Civil 2d</u> § 1476 (1990) (footnotes omitted).  An
amended complaint may adopt some or all of the allegations in the
original complaint, but the identification of the particular
allegations to be adopted must be clear and explicit.  <u>Id</u>.  To
avoid confusion, the safer course is to file an amended complaint
that is complete in itself.  <u>Id</u>.