[NOT FOR PUBLICATION]                    [Doc. No. 33]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

CHAKA KWANZAA,

       Plaintiff,

    v.                                        Civil No. 05-5976 (RMB)

DEVON BROWN, et al.,                        **OPINION**

       Defendants.


Appearances:
    Chaka Kwanzaa
    # 96993-B / 238671
    C.R.A.F.-E-2-W
    P.O. Box 7450
    West Trenton, NJ 08628
        Plaintiff, pro se

    Thomas Edward Kemble
    Office of the N.J. Attorney General
    25 Market St.
    P.O. Box 112
    Trenton, NJ 08625-0112
        Attorney for Defendants J. Knowles, and L. Sherrer,
        Crenny, J. Caldwell, Kathryn MacFarland, A. Jallot,
        Eisinger, J. Dice, Sgt. McDowell, and J. Wehrwian.

    James R. Birchmeier
    Powell, Birchmeier & Powell, Esqs.
    1891 State Highway 50
    P.O. Box 582
    Tuckahoe, NJ 08250-0582
        Attorney for Defendants J. Knowles, L. Sherrer, Kathryn
        MacFarland, and Eisinger.

    Timothy M. Crammer
    Crammer, Bishop, Marczyk & O'Brien, PC
    508 New Jersey Ave.
    Suite B3

Abescon, NJ 08201
      Attorney for Defendants S. Kudla, Dr. F. Green, T.P.
      Pitone, Hollenbeck, and Dr. Sha.


**BUMB**, United States District Judge:

This matter comes before the Court upon a motion for summary judgment in lieu of an Answer by Defendants, numerous New Jersey Department of Corrections officers and administrators. Plaintiff, pro se, Chaka Kwannza, a state inmate, filed a Complaint in this Court alleging Defendants violated his constitutional rights.  Defendants raise multiple grounds for judgment which will be discussed in turn below.


I. Statement of Facts

The following factual allegations are taken from the Complaint and are accepted as true for purposes of this review. Large parts of the Complaint previously dismissed will not be discussed.

In his Complaint, Kwanzaa asserts claims against numerous defendants employed by the New Jersey Department of Corrections ("NJDOC"), Central Medical Services ("CMS"), and the New Jersey State Parole Board ("NJSPB").  Kwanzaa states that he had filed an earlier action with respect to many of the claims in this action, which was dismissed for failure to conform to

Fed.R.Civ.P. 8(a)(2).[1]  He also alleges that he has a civil

action pending in state court raising the claims in this action.

Kwanzaa alleges that from the beginning of his confinement

in state prison, he has been the "target of systemic and

conspired and coordinated abuse at the hands of individual

defendants," all employees of NJDOC, CMS, and NJSPB.  He asserts

claims of "routine denial of access to the courts, deprivation of

medically prescribed living aids and devices and appropriate

medical care, discrimination, [and] retaliation for Kwanzaa's

practice of documenting grievances and redress with the court

against defendants."  (Compl. at ¶ 2).  Kwanzaa admits that he

had filed an earlier civil action in this district court,

regarding the same claims as raised herein.  See Doe v. Knowles,

et al., Civil No. 03-3956 (AET)(Document Entry No. 11).  That

earlier case was dismissed without prejudice by this Court, via

Memorandum & Order filed February 8, 2005.  At that time, the

court had found that Kwanzaa was unable to clarify or articulate

his claims in a rambling, incoherent 37-page Complaint.  Id.

Kwanzaa further acknowledges that he has a pending state law

action regarding the very same claims as asserted here.  (Compl.

---

[1]  Plaintiff had appealed to the Third Circuit, but his
appeal was dismissed for failure to timely prosecute by Order
entered June 6, 2005.  He had also filed a writ of mandamus with
the Third Circuit to compel the district court to rule on his
motions in the action which had been dismissed.  The Third
Circuit denied the writ on February 14, 2005.

at ¶ 4).  He does not provide any further information about the state court action.[2]

Kwanzaa's present Complaint also rambles and alleges numerous violations against more than thirty individual defendants.  This Court screened the claims in the Complaint as required under 28 U.S.C. §§ 1915(e)(2) and 1915A, and dismissed approximately sixteen of the Defendants.

Claims Against NJDOC Defendants

Kwanzaa begins his Complaint by asserting claims against NJDOC officials.  Kwanzaa asserts that defendant J. Knowles had him arbitrarily transferred to another prison facility in December 2002 in retaliation for Kwanzaa filing an action in court in 1999.  On May 7, 2003, Knowles threatened Kwanzaa with disciplinary charges and had Kwanzaa placed in detention after Kwanzaa threatened a law suit.  Kwanzaa was allegedly found not guilty of these disciplinary charges, but Knowles continued to retaliate against Kwanzaa from December 9, 2002 until March 17, 2004, by keeping plaintiff in administrative segregation.

---

[2]  The Complaint makes only a general reference to a related pending state court action, and does not indicate those claims that are similar to the claims alleged in this Complaint.  Thus, this Court cannot determine whether the state court action should be stayed pending resolution of related federal constitutional claims in this Court.  It also is not clear whether any of the alleged claims here have been fully adjudicated in state court, which may make such claims subject to res judicata or claim preclusion bar.  Accordingly, the Court will leave this issue to be addressed by the parties.

Knowles also refused to comply with Kwanzaa's medical orders to ambulate with a cane and be housed on the first floor. Kwanzaa further asserts that Knowles violated his rights by allowing open door medical examinations, denying disability devices and access in administrative segregation and denying legal access to the courts, which resulted in his appeal being dismissed in 2002. (Compl. at ¶ 29).

Kwanzaa asserts many of the same claims against defendant Lydell Sherrer, namely, that Sherrer violated his rights by allowing open door medical examinations, denying disability devices and access in administrative segregation, and failing to restore commutation credits, and arbitrarily transferring Kwanzaa to another prison facility in retaliation for Kwanzaa filing civil actions. Plaintiff further asserts that, in January 2005, Sherrer arbitrarily transferred Kwanzaa to BSP where Kwanzaa was assaulted and placed in detention for 43 days, from February 3, 2005 to March 17, 2005. In May 2004, Kwanzaa's law books and other personal property were allegedly stolen and plaintiff claims Sherrer arbitrarily denied plaintiff's grievance for remedy. Kwanzaa also alleges that he was denied legal access from May 2002 to December 9, 2002, when his appeal was dismissed as untimely. (Compl. at ¶ 30).

<u>Claims Against BSP Defendants</u>

Kwanzaa next asserts claims against BSP defendants. On

5

January 27, 2005, he alleges that defendant SCO Caldwell
subjected him to an arbitrary cell search after Kwanzaa had filed
a grievance about retaliatory and arbitrary cell searches.
Kwanzaa filed another grievance on February 2, 2005, and Caldwell
again subjected Kwanzaa to an arbitrary cell search on February
3, 2005.  Plaintiff further alleges that Caldwell filed a false
disciplinary charge against him, which was later dismissed, in
retaliation for Kwanzaa filing grievances regarding the searches.
Kwanzaa received 43 days detention as a result of this violation.
Caldwell also confiscated Kwanzaa's cane that was medically
prescribed to him.  (Compl. at ¶ 31).

Defendant SCO Crenny also filed a false disciplinary charge
against Kwanzaa on February 3, 2005, he asserts, after Kwanzaa
threatened to file a civil action against Crenny for assaulting
plaintiff while he was being escorted to detention.  On the same
date, defendant D. Ayers allegedly threatened plaintiff with a
fabricated disciplinary charge and violated plaintiff's right to
privacy by listening to medical information exchanged between
plaintiff and a nurse while plaintiff was in detention.  Kwanzaa
also alleges that these two defendants confiscated his medically
prescribed cane and refused to return it to him while he was in
detention.  (Compl. at ¶¶ 32, 33).

Claims Against SWSP Defendants

Kwanzaa next asserts claims against individual defendants at

6

South Woods State Prison ("SWSP").  First, against the Warden K. MacFarland, Kwanzaa complains that, on March 17, 2005, he placed MacFarland on notice of his 1999 grievances after he arrived at SWSP, and she has done nothing to remedy them.  Kwanzaa also refers to grievances that are, as alleged by plaintiff himself, part of his pending lawsuit in state court.  He alleges that SCO Eisinger verbally harassed him when he arrived at SWSP by telling plaintiff "Go stand by the fucking wall nigger".  Kwanzaa further complains that he received two disciplinary charges for refusing to bunk on an upper level because of his medical restrictions.[3] He states that he appealed these charges and the matter is still pending in the state appellate court.  (Compl. at ¶ 39).

MacFarland also refuses to address Kwanzaa's administrative remedy forms within the time as regulated.  Kwanzaa alleges that this is done to hinder him from filing civil actions in court. He admits that some of the grievances are returned with "made up answers or no answers".  (Compl. at ¶ 42).  MacFarland, plaintiff claims, has arbitrarily discriminated against him by having two jobs taken away from Kwanzaa between April 6, 2005 and May 2005, allegedly because of plaintiff's disability.  She also has refused to correct his prison records by failing to restore 390

---

[3]  Kwanzaa states that he is forced to stand outside his cell door for 15 to 30 minutes while he is waiting for the officers to open the cell.  He claims that this is against medical orders.  (Compl. at ¶ 39).

days commutation credits, which effects Kwanzaa's parole date.
Kwanzaa further complains that MacFarland has not corrected the
issuance of 7 points to his prison score when he arrived at SWSP,
despite remedy requests.  (Compl. at ¶¶ 42, 43).

Kwanzaa also complains that MacFarland has a policy of no
medications allowed to prisoners in detention.  On April 11,
2005, Kwanzaa's personal property, including his back, leg and
arm braces, egg crate mattress, medical boots, and eyeglasses
were confiscated and were ordered to be sent home against medical
advice.  MacFarland also allows open-door medical examinations
and refuses to install video cameras in the blind areas of SWSP
to prevent inmate assaults.  (Compl. at ¶¶ 44-47).

On July 7, 2005, Kwanzaa alleges that defendant Sgt. J. Dice
issued a retaliatory charge against plaintiff for having filed a
grievance in March 2005 and an appeal.[4]  Kwanzaa then filed a
grievance and appeal with defendant A. Jalloh for a remedy on
July 12, 2005.  Kwanzaa was adjudicated guilty by a courtline
officer on July 13, 2005.  Jalloh returned Kwanzaa's appeal
"unremedied" and threatened Kwanzaa with detention if plaintiff
filed another appeal.  Kwanzaa sent a letter to then-Governor
Codey, who referred the matter to defendant Devon Brown.  Kwanzaa

---

[4]  Kwanzaa alleges that on March 17, 2005, defendant Dice
assaulted plaintiff by kicking him while plaintiff was having an
asthma attack.  Dice allegedly filed a false disciplinary charge
to cover his actions.  (Compl., ¶ 52).

has not received any answer from defendant Brown.  He claims that the NJDOC arbitrarily files minor charges against prisoners to "hinder" them from seeking redress with the courts.  (Compl. at ¶ 48).

On March 17, 2005, Kwanzaa states that defendant Eisinger violated his rights under the Eighth Amendment when Eisinger made plaintiff stand for a prolonged period of time (about 20 minutes) in his housing area with deliberate indifference to plaintiff's medical condition.  Eisinger also allegedly filed a retaliatory charge against Kwanzaa after Kwanzaa complained.  When Kwanzaa threatened to file an action with the courts, Eisinger allegedly fabricated orders to house Kwanzaa on an upper level without regard to the medical restriction in his file stating that he should be housed on the ground floor.  Kwanzaa was found guilty of the disciplinary charge and defendant Jalloh affirmed on administrative appeal.  Eisinger again filed an "on the spot" charge against Kwanzaa on November 4, 2005 after Kwanzaa objected to Eisinger's order to plaintiff to stand for a prolonged time.  However, Kwanzaa admits that this charge was dismissed because of his medical restriction.  (Compl. at ¶ 49).

Next, Kwanzaa alleges that, on September 16, 2005, defendant Sgt. McDowell arbitrarily denied plaintiff access to Ju'mah religious services in retaliation for plaintiff having filed a grievance against him in 1999.  On October 7, 2005, McDowell

9

reviewed plaintiff's medical information in the medical
department in front of other correctional officers.  Kwanzaa
objected to their review of his private medical information, and
McDowell ordered that plaintiff be placed in a detention holding
cell while McDowell continued to review Kwanzaa's medical
records.  After ten minutes, Kwanzaa's medical materials were
returned to him.  McDowell also allegedly tampered with
plaintiff's mail on October 27, 2005, and his appeal had to be
filed <u>nunc pro tunc</u>.  (Compl. at ¶¶ 50-51).

Finally, Kwanzaa alleges that defendant J. Wehrwian
subjected him to arbitrary cell searches on April 21, 2005 and
June 9, 2005.  Plaintiff claims that the second cell search was
in retaliation for filing a grievance against Wehrwian.  (Compl.
at ¶ 53).

<u>Claims Against CMS Defendants</u>

Finally, Kwanzaa asserts claims against the Correctional
Medical Services ("CMS") defendants, Dr. F. Green, Dr. Sha, and
Nurses S. Kudla, R. Kuhn, T. Pipitone, and Hollenbeck.  He
alleges that these defendants, since March 17, 2005, have
violated his privacy rights by talking about his medical
information in open examination rooms with correctional officers
working in the area.  He also contends that the defendants have
arbitrarily denied plaintiff his cane and other medical devices
(medical boots, back, leg and arm braces, and an egg crate or

double mattress) allegedly prescribed by "specialists". Defendants have also discontinued his pain medications (Darvocet), allegedly prescribed by "specialists", and charge plaintiff for medications, such as nasal spray, and fail to issue them to him.  (Compl. at ¶¶ 58-59).

On March 18, 2005, T. Pipitone and Dr. Hellander advised correctional officers to place Kwanzaa on an upper level floor in detention with his cane, after Kwanzaa was returned to prison from being treated in a hospital for an asthma attack.  Kwanzaa alleges that he had medical orders and his medical file shows that an upper level assignment was medically restricted.  He also alleges that defendants arbitrarily refused to provide him with eyeglasses for seven months, resulting in poorer eyesight and a stronger eyeglass prescription.  Kwanzaa claims that he has been denied 90 day blood lab tests.  He further alleges that Nurse Hollenbeck put a medical request slip for a throat specialist on an officer's desk, violating his right to privacy.  Finally, Kwanzaa alleges that after he had complained about the violations of his privacy rights respecting medical information, his medical restrictions were deleted from the computer, and changed from "no prolonged standing" to "15 minute standing".  (Compl. at ¶ 59).

Accordingly, the following claims remain against the Defendants: (1) the denial of medical care claim; (2) unlawful

cell searches claim; (3) retaliation claims; (4)denial of
religious services claim; (5) violation of the right to medical
privacy claim; and (6) the excessive force claim against
defendants Crenny and Dice.  Defendants have moved for dismissal
in lieu of an answer on numerous grounds that will be discussed
in turn below.

II.  Standard

     Like many pro se prisoner suits this case has quickly become
long on procedure and short on substance, a fact attributable to
both parties.  The Court is mindful that these types of cases
present unique challenges for both the Court and the parties.
The pro se litigant, often alleging deprivations of his most
basic rights to humane treatment and bodily integrity, is
burdened by lack of counsel and the uncompromising restrictions
of incarceration.  Conversely, the state is burdened with
answering numerous, lengthy, and unconventional pleadings which
often advance frivolous claims and that quickly tax the resources
of the responsible agencies and departments.  Indeed, Congress
has sought to balance this tension between the rights of
plaintiff and the needs of the state with 28 U.S.C. §§ 1915(e)(2)
and 1915A.  Under these sections each and every pro se prisoner
civil rights suit is screened to ensure the complaint states a
claim, 28 U.S.C. § 1915A(b)(1).  In essence, to ensure the

12

complaint is not frivolous, 28 U.S.C. § 1915A(b)(1), or brought against a party immune from suit, 28 U.S.C. § 1915A(b)(2).

The standard is a liberal one, however.  A complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  This minimal requirement is further relaxed when the complainant is pro se, requiring the Court to liberally construe the pleading, Estelle v. Gamble, 429 U.S. 97, 106 (1976), so "as to do substantial justice," Fed. R. of Civ. P. 8(f).  The Third Circuit has affirmed that in the case of pro se complaints in civil rights cases the complainant need not plead every fact necessary so long as the complaint states a claim upon which relief can be granted.  Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004); see also, Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).

As noted, this Court has screened Plaintiff's Complaint under the standard articulated above.  Plaintiff Kwanzaa's initial Complaint rambled on at length cataloging alleged grievances that stretched over a decade of incarceration.  This Court, in an Opinion dated August 18, 2006, dismissed over a dozen Defendants and narrowed Plaintiff's claims against the remaining Defendants to six discernable coherent grievances for which Plaintiff may obtain relief.  [See, generally, Doc. 5; see also, supra, at 11-12].

Six months later Defendants moved for summary judgment in lieu of an answer, submitted a voluminous brief that raised no less then eleven points on which this Court could grant Defendants judgment, and relied upon numerous affidavits and certifications in support. [Doc. 33]. Defendants asserted that Plaintiff cannot rely merely on his allegations to defeat summary judgment, [Doc. 44 at 2-3], which is true, see S.E.C. v. J.W. Barclay & Co., 442 F.3d 834, 840 (3d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Defendants argue that their certifications and affidavits provide an evidentiary record which Plaintiff cannot dispute.

This motion coming, however, at a point where Defendants have not even answered the Complaint, never mind exchanged any discovery with Plaintiff, and Plaintiff being incarcerated and pro se, it would be wholly inappropriate to dismiss Plaintiff's Complaint for a failure to produce evidence in opposition. See Fed. R. Civ. P. 56(f).

> The need for discovery before testing a complaint for factual sufficiency is particularly acute for civil rights plaintiffs, who often face information disadvantages. See Colburn [v. Upper Darby Township], 838 F.2d [663,] 667 [3d Cir. 1988]. Plaintiffs may be unaware of the [necessary facts] and owing to their incarceration or institutionalization, unable to conduct a pre-trial investigation to fill in the gaps. But by itself, this lack of knowledge does not bar entry into a federal court. The principles of notice pleading and the liberal discovery rules allow for meritorious claims to proceed even if a confined prisoner cannot adduce all the necessary facts at the outset. . . . . [I]n such cases, access to discovery

may well be critical. <u>See Gillespie v. Civiletti</u>, 629
F.2d 637, 642 (9th Cir. 1980) ("The plaintiff should be
given an opportunity through discovery to identify the
unknown defendants, unless it is clear that discovery
would not uncover the identities, or that the complaint
would be dismissed on other grounds."); <u>see also</u>
<u>Billman v. Indiana Dep't of Corr.</u>, 56 F.3d 785, 789-90
(7th Cir. 1995) (Posner, C.J.) ("The peculiar
perversity of imposing heightened pleading standards in
prisoner cases . . . is that it is far more difficult
for a prisoner to write a detailed complaint than for a
free person to do so, and again this is not because the
prisoner does not know the law but because he is not
able to investigate before filing suit."). . . . .
Because [plaintiff]'s complaint was dismissed before an
opportunity for discovery, any expectation of factual
sufficiency was premature. It is a first principle of
federal civil procedure that litigants "are entitled to
discovery before being put to their proof." <u>Bennett v.
Schmidt</u>, 153 F.3d 516, 519 (7th Cir. 1998).

<u>Alston</u>, 363 F. 3d at 233 n.6.  Accordingly, to the extent that

Defendants' arguments rely only upon Plaintiff's lack of

evidence, they will be summarily rejected at this point.


III. Analysis

     Defendants' first contend that Plaintiff's claims against

the individual Defendants in the official capacity must be

dismissed because state officials named in their official

capacities are not "persons" amenable to suit under 42 U.S.C. §

1983.  This argument would be applicable if Plaintiff had

asserted any claims against the Defendants in their official

capacity.[5]  A prudent defendant will certainly argue against

_____

     [5]    Even if such a claim could be implied, which it cannot,
such claims are ordinarily screened for under 28 U.S.C. §

claims that may be implied in a complaint.  However, Plaintiff's Complaint states unambiguously in the caption: "Defendant's [sic] et al [sic]; All being sued in  their individual and personal capacities."  This and other arguments raised by Defendants, <u>see</u>, <u>infra</u> at 17, give this Court serious concern as to whether Defendants have diligently reviewed the Complaint.  Accordingly, Defendants motion for judgment on this ground will be denied.

Defendants contend next that Plaintiff's complaint must be dismissed because a 42 U.S.C. § 1983 claim cannot be premised upon a theory of respondeat superior.  A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of <u>respondeat superior</u>.  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988); <u>Paratt v. Taylor</u>, 451 U.S. 527, 537 n. 3, 101 S.Ct. 1908, 1913 n. 3, 68 L.Ed.2d 420 (1981); <u>Hampton v. Holmesburg Prison Officials</u>, 546 F.2d 1077, 1082 (3d Cir. 1976). For a supervisor to be liable under 42 U.S.C. § 1983, the supervisor must have personally directed a subordinate to act in a way that would deprive plaintiff of his constitutional rights or must have had actual knowledge of and acquiesced to the deprivation to plaintiff. <u>Rode</u>, 845 F.2d at 1207.

In this case, Plaintiff seeks to hold defendants Sherrer,

---

1915A(b)(2) (screening for claims for money "damages against a defendant who is immune from such relief.").

Knowles, Jalloh and MacFarland, in their individuals capacities, liable to suit under 42 U.S.C. § 1983.  Although Plaintiff offers no evidence, he alleges throughout the Complaint that each Defendant either directed others in the injurious conduct or acquiesced to it.  Moreover, Plaintiff's Opposition to Defendants' motion requests the opportunity to conduct discovery "that shall authenticate his case." [Doc. No. 36, at 4]. Accordingly, at this stage in the proceedings it would inappropriate to grant defendants Sherrer, Knowles, Jalloh and MacFarland judgment on this ground.

Defendants also argue that Plaintiff's complaint must be dismissed because plaintiff cannot establish a prima facie case for conspiracy pursuant to 42 U.S.C. § 1985.  Again, this argument requires the Court to question whether Defendants have read Plaintiff's Complaint and this Court's opinion of August 17, 2006, [Doc. No. 5].  The only Defendants against whom Plaintiff's Complaint could be viewed as alleging a conspiracy claim have been dismissed.  [Id. at 8-9, 60-61 (identifying allegations against ESP Defendants and dismissing same)].  On the other hand, Plaintiff alleges multiple claims of retaliation by Defendants. This Court's earlier opinion addressed these claims and stated the elements of a retaliation claim, [see id. at 39], which exists independent of a claim under 42 U.S.C. § 1985. Accordingly, because Plaintiff's Complaint does not raise a claim

17

under 42 U.S.C. § 1985, Defendants will be denied judgment on
this ground.

Defendants next argue that Plaintiff's complaint fails to
state a claim under 42 U.S.C. § 1986.  Again, neither Plaintiff's
Complaint, nor this Court's Opinion, supports a conclusion that
Plaintiff asserts a claim under 42 U.S.C. § 1986.  Accordingly,
Defendants will be denied judgment on this ground.

Defendants contend that plaintiff cannot establish a prima
facie case of retaliation for filing grievances and lawsuits.  To
establish a prima facie case of retaliation, a prisoner-plaintiff
must first prove that the conduct which led to the alleged
retaliation was constitutionally protected.  Rauser v. Horn, 241
F.3d 330, 333 (3d Cir. 2001) (citing Thaddeus-X v. Blatter, 175
F.3d 378, 389 (6th Cir. 1999)).  Second, the prisoner-plaintiff
must show that he suffered an adverse action at the hands of the
prison officials by demonstrating that the action was sufficient
to deter a person of ordinary firmness from exercising his
constitutional rights.  Id. (citing Allah v. Seiverling, 229 F.3d
220, 225 (3d Cir. 2000).  Third, the prisoner-plaintiff must
prove a causal link between the exercise of his constitutional
rights and the adverse action taken against him.  Id.  Fourth, the
prisoner-plaintiff bears the burden of proving that the
constitutionally protected conduct was "a substantial and
motivating factor" in the adverse action taken against him.  Id.

18

Many of the liberties and privileges afforded to citizens must be surrendered by a prisoner. Overton v. Bazzetta, 539 U.S. 126, 131 (2003) (citing Jones v. North Carolina Prisoner's Labor Union, Inc., 433 U.S. 119, 125 (1977); Shaw v. Murphy, 532 U.S. 223, 229 (2001)). The State may maintain prison regulations that impinge on an inmate's constitutional rights when the regulations are reasonably related to a legitimate penological purpose. Turner v. Safley, 482 U.S. 78, 89-90 (1987). However, the State has an important and substantial interest in the security and order of its prison facilities and in the rehabilitation of inmates. Procunier v. Martinez, 416 U.S. 396, 413-14 (1974).

An inmate does not have a liberty interest in his housing assignments. Sandin v. Connor, 515 U.S. 472 (1995). In addition, prison officials have broad discretion to transfer an inmate from one institution to another, even where the degree of confinement in one prison may differ from that in another. Meachum v. Fano, 427 U.S. 215, 224-225 (1976). Accordingly, this Court dismissed Plaintiff's claims of retaliation based on his transfers, a resolution applicable to all retaliatory transfer claims against all Defendants. [See Doc. No. 5 at 41-12].

Plaintiff also alleges that Caldwell subjected him to retaliatory cell searches and disciplinary charges, and that Crenny confiscated his cane and wrote a retaliatory disciplinary charge. Id. at ¶¶ 12-13. Plaintiff alleges that MacFarland

19

retaliated against him and permitted others to do the same; that
Jalloh threatened to place him in detention; that Dice and
Eisinger wrote retaliatory disciplinary charges against him; and
that Officer Wehrwein conducted unlawful cell searches and wrote
retaliatory disciplinary charges against him.  <u>Id.</u> at ¶¶ 17-19, ¶
21.  Finally, plaintiff claims that Knowles retaliated against
him by keeping him in detention.  <u>Id.</u> at ¶ 171.

        Defendants argue that Plaintiff has not provided evidence
that of the alleged retaliation.  However, and as already noted,
Plaintiff's lack of evidence cannot be held against him when
Defendants have yet to even file an Answer to his Complaint.
Plaintiff asserts that discovery will substantiate his claims.
[Doc. No. 36 at 4].  Accordingly, Defendants will be denied
judgment on this ground, as well.

        Defendants contend that Plaintiff's complaint should be
dismissed because all defendants are entitled to qualified
immunity.  In order for a defendant to prevail in a § 1983 action
for civil damages from a government official performing
discretionary functions, the defense of qualified immunity
requires that the official be shown to have violated "clearly
established statutory or constitutional rights of which a
reasonable person would have known."  <u>Conn v. Gabbert</u>, 526 U.S.
286, 290 (1999) (<u>citing</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818
(1982)).  A court must first determine whether the plaintiff has

alleged the deprivation of an actual constitutional right at all,
and if so, then proceed to determine whether that right was
clearly established at the time of the alleged violation.  <u>Id.</u>
Therefore, if the plaintiff has alleged a deprivation of an
actual constitutional right, and that right is clearly
established at the time of the alleged violation, the defendant
is not entitled to qualified immunity.  However, if in the
contrast, the plaintiff's allegation fail to satisfy the inquiry,
the defendant is entitled to qualified immunity and judgment in
their favor.

Here, this Court's Opinion of August 17, 2006, examined
Plaintiff's claims for dismissal and permitted only those
allegations that stated a claim for violation of a constitutional
right to proceed.  [Doc. No. 5].  Explicit in each section of
this Court's analysis is the finding that Plaintiff alleged the
deprivation of an actual constitutional right [<u>see, e.g.</u>, Doc.
No. 5 at 39-40].  At this point in the proceedings the Court must
conclude that the right, as alleged was clearly established.  It
is possible that the evidence will show that the alleged
deprivation did not violate a clearly established right.
However, that conclusion must await a developed factual record.
Accordingly, Defendants will be denied summary judgment on this
ground.

Defendants' remaining substantive arguments are as

unavailing as those already discussed.  Defendants argue that
Plaintiff's claims of violations of his medical privacy rights;
violations of his right to  medical care; and his claims for
excessive force, are unsubstantiated.  This is true, Plaintiff's
claims are unsubstantiated, because Defendants have not filed an
Answer to the Complaint or provided Plaintiff with any discovery.
As this Court stated in its prior Opinion, with regard to the
medical privacy claims: "Here, where the Complaint alleges facts
that, if true, might [substantiate Plaintiff's claims], Kwanzaa
has stated a claim sufficient to withstand summary dismissal at
this preliminary stage."  [Doc. No. 5 at 58].  Since that Opinion
nothing has changed that would alter that conclusion.  Although
Defendants have provided affidavits, they have not filed an
Answer nor provided Plaintiff with any discovery.  Thus,
Plaintiff may be able to obtain evidence that would support his
allegations that his rights were violated.  Accordingly,
Defendants will be denied summary judgment on this ground.

     Defendants' penultimate argument states that Plaintiff is
not entitled to punitive damages because it has not been shown
that Defendants' conduct was egregious or motivated by malice.
See Smith v. Wade, 461 U.S. 30 (1983).  The evidence may indeed
show especially egregious behavior or malice on the part of the
Defendants.  Accordingly, Plaintiff will not be barred from
seeking punitive damages at this stage.

Finally, Defendants' repeated failure to file an Answer prompted Plaintiff to seek an entry of default against Defendants.  Defendants argue against the entry of default. Magistrate Judge Ann Marie Donio denied Plaintiff's motion for default.  [Doc. No. 38].  Accordingly, this argument is moot.

IV.  Conclusion

For the above stated reasons, Defendants' motion for summary judgment is denied.  All remaining claims against all Defendants not previously dismissed remain.  An appropriate order will issue this date.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: June 15, 2007

23