<u>NOT FOR PUBLICATION</u>                    [Dkt. Nos. 9, 134, 135,
                                           144, 146, 150, 156, 162]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

CHAKA KWANZAA,

              Plaintiff,

    v.                                    Civil No. 05-5976 (RMB)

DEVON BROWN, et al.,                       **OPINION**

              Defendants.

Appearances:

    Chaka Kwanzaa
    # 96993-B / 238671
    C.R.A.F.-E-2-W
    P.O. Box 7450
    West Trenton, NJ 08628
        Plaintiff, <u>pro</u> <u>se</u>

    Thomas Edward Kemble
    Office of the N.J. Attorney General
    25 Market St.
    P.O. Box 112
    Trenton, NJ 08625-0112
        Attorney for Defendants J. Knowles, L. Sherrer, L.
        Crenny, J. Caldwell, K. MacFarland, A. Jallott, G.
        Eisinger, J. Dice, C. McDowell, and J. Wehrwein

    James R. Birchmeier
    Powell, Birchmeier & Powell
    1891 State Highway 50
    P.O. Box 582
    Tuckahoe, NJ 08250-0582
        Attorney for Defendants J. Knowles, L. Sherrer, K.
        MacFarland, and G. Eisinger (as to medical claims)

    Timothy M. Crammer
    Crammer, Bishop, Marczyk & O'Brien, PC
    508 New Jersey Ave., Suite B3

1

Abescon, NJ 08201
        Attorney for Defendants S. Kudla, F. Green, T.
        Pipitione, N. Shah, D. Hollenbeck


**BUMB**, United States District Judge:

## I.    Introduction

This matter comes before the Court upon three motions:
Plaintiff's Motion for Reconsideration [Docket No. 9];
Defendants' Motion for Summary Judgment [Docket No. 134, 146,
150][1], and Plaintiff's Motion for a Temporary Restraining Order
[Docket No. 156].  For the reasons set forth below, Plaintiff's
requests for reconsideration of this Court's August 17, 2006
Order and a Temporary Restraining Order are denied and summary
judgment as to all claims is granted in Defendants' favor.

## II.   Procedural History

### A.    Complaint

Plaintiff Chaka Kwanzaa, an inmate of the New Jersey
Department of Corrections ("NJDOC") currently incarcerated at
East Jersey State Prison in Rahway, New Jersey, is serving a

---

[1]  Three Motions for Summary Judgment were filed by separate
groups of Defendants: (1) Defendants J. Knowles, L. Sherrer, L.
Crenny, J. Caldwell, K. MacFarland, A. Jallott, G. Eisinger, J.
Dice, C. McDowell, and J. Wehrwian (the "State Defendants")
[Docket No. 134]; (2) Defendants S. Kudla, F. Green, T.
Pipitione, N. Shah, D. Hollenbeck (the "CMS Defendants")[Docket
No. 146]; and (3) the State Defendants' Motion for Summary
Judgment with respect to any and all claims relating to
inadequate medical care [Docket No. 150].  Because the issues in
these motions overlap, the Court addresses all three summary
judgment motions in this Opinion.

sentence of 20-23 years, 7 years minimum for robbery.  (State
Defendants' Statement of Facts ("State Def. SOF") at ¶1.)
Plaintiff submitted a Complaint on or about December 28, 2005
stating several constitutional claims against various corrections
officers, prison administrators and medical providers [Docket No.
7].  Plaintiff noted in this Complaint that he had filed an
earlier action stating some of the same claims but that his
Complaint had been dismissed pursuant to Fed.R.Civ.P. 8(a)(2).
Compl. at ¶4.  See Doe v. Knowles, et al., Civil No. 03-3956
(D.N.J. Feb. 8, 2005) (order dismissing complaint).  Plaintiff
timely appealed this dismissal but failed to prosecute the
appeal.  See Kwanzaa v. Knowles, et al., Civil No. 05-1928 (3d
Cir. June 6, 2005) (order dismissing appeal).

The Court reviewed the Complaint Plaintiff filed in 2005
pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A and permitted
Plaintiff's cognizable claims to proceed [Docket No. 6].  Because
it appeared that Plaintiff could allege facts necessary to
support an excessive force claim against one of the State
Defendants, the Court permitted Plaintiff the opportunity to
amend his Complaint within thirty days, subject to Fed.R.Civ.P.
15, to properly state this claim [Docket No. 5 and 6].[2]

**B. Amended Complaint**

On September 1, 2006, Plaintiff sent a letter[3] to the Clerk

---

[2]   See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).
[3]   Because Plaintiff's letter was docketed as a letter, and not
as a motion seeking reconsideration, no action was taken on the

requesting reconsideration of the Court's August 17, 2006 Order

and Opinion and attached an Amended Complaint [Docket No. 9].[4]

Plaintiff's Amended Complaint restated several claims that the

Court had previously dismissed, as well as several new parties.

These parties are not properly before the Court.[5]

---

letter.  Almost three years later, on March 16, 2009, Plaintiff
filed a second letter in which he questioned why the Court did
not address his request for reconsideration.  [Docket No. 127.]
The Court will now consider whether the Court's Opinion and Order
dismissing several of Plaintiff's claims was justified.

[4]    The Amended Complaint was not docketed as such until
November 27, 2006.

[5]    Despite being granted only limited leave to amend his
Complaint, see August 17, 2006 Order at 3[Docket Item 6],
Plaintiff's Amended Complaint named new Defendants:  Capt.
Dawson, S.C.O. Reiley, Sgt. Augustine, S.C.O. Regbee, Nurse
Feldman and Nurse Mayo.  However, these parties were never served
with process or otherwise mentioned in any of Plaintiff's
numerous pleadings.  "As proper service is a prerequisite to
personal jurisdiction," these parties are not properly before
this Court.  Travillion v. Coffee, 248 Fed.Appx. 335, 337 (3d
Cir. 2007), cert. denied, 128 S.Ct. 1478 (2008).  Nonetheless,
even assuming these parties were properly before this Court,
dismissal of Plaintiff's claims against these Defendants would be
warranted.
        Ordinarily, "an incarcerated pro se plaintiff proceeding in
forma pauperis is entitled to rely on the U.S. Marshal for
service of the summons and complaint, and, having provided the
necessary information to help effectuate service, plaintiff
should not be penalized by having his or her action dismissed for
failure to effect service."  Muhammad v. Dep't of Corrections,
Civ. No. 05-4999, 2008 WL 4911876, at *14 n.16 (D.N.J. Nov. 12,
2008) (quoting Puett v. Blandford, 912 F.2d 270, 275 (9th Cir.
1990)).  However, the facts here do not relieve Plaintiff from
his obligation to prosecute diligently his suit against these
added Defendants.
        Plaintiff never addressed these parties in any other
pleading.  Plaintiff filed no less than four requests for default
without ever asking that default be entered against the parties
he added in the Amended Complaint [Docket Items 13, 24, 30, 80].
Plaintiff also submitted a Pretrial Memorandum and Statement of
Material Facts that did not address these parties [Docket Items
37 and 98].  Given Plaintiff's failure to address the parties
added in his Amended Complaint in over four years, dismissal

4

would be warranted.  See VanDiver v. Martin, 304 F.Supp.2d 934, 942 (E.D. Mich. 2004)(*pro se* prisoner's silence after being notified that defendants had not been served, and in absence of evidence that plaintiff took any steps to ensure that defendants were served, warranted dismissal of claims against unserved defendants); see also Rochon v. Dawson, 828 F.2d 1107, 1110 (5th Cir. 1987) ("While [plaintiff] and other incarcerated plaintiffs proceeding in forma pauperis may rely on service by the U.S. Marshals, a plaintiff may not remain silent and do nothing to effectuate such service. At a minimum, a plaintiff should request service upon the appropriate defendant and attempt to remedy any apparent service defects of which a plaintiff has knowledge.").

Moreover, even if this Court were to permit a curative amendment to properly add these parties at this late date, such amendment would be futile.  See Alston, 363 F.3d at 235-36. Federal Rule of Civil Procedure 15(c) governs the circumstances under which an amendment will relate back to the original pleading.  Three conditions must be met: (1) the claim against the newly named defendants must have arisen out of the same conduct, transaction, or occurrence set forth in the original complaint, (2) the newly named party must have received notice of the action within the 120-day period for service of the summons and complaint, such that the party would not be prejudiced in maintaining a defense on the merits, and (3) the newly named party must have known, or should have known, that he or she would have been named as a defendant but for plaintiff's mistake. Singletary v. Penn. Dep't of Corrections, 266 F.3d 186, 194 (3d Cir. 2001).  These conditions are not met here.

Plaintiff's claims against Capt. Dawson, S.C.O. Reiley, Sgt. Augustine and S.C.O. Regbee do not arise out of any conduct, transaction or occurrence that was set forth in the original complaint, thus failing the first condition for relation back. Rather, Plaintiff's claims against these Defendants originate from separate incidents not previously pled.  Plaintiff's claim against Capt. Dawson arises out of a January 2006 incident where Plaintiff alleges that he was prevented from attending a religious service because Capt. Dawson ordered that Plaintiff be locked in the medical department waiting room.  See Am. Compl. at ¶20.  Plaintiff alleges that on August 20, 2006, Sgt. Augustine searched Plaintiff's cell and confiscated Plaintiff's medication in retaliation for grievances that Plaintiff filed against Sgt. Augustine.  See Am. Compl. at ¶23.  Finally, Plaintiff alleges that on August 28, 2006, S.C.O. Regbee harassed Plaintiff and put items in Plaintiff's food in retaliation for grievances Plaintiff filed.  See Am. Compl. at ¶24.

Plaintiff makes no specific, factual allegations as to Nurse Feldman or Nurse Mayo; Plaintiff simply adds these parties to his list of CMS Defendants.  See Am. Compl. ¶¶26 and 27.  But even if

the Court were to consider Plaintiff's claims against these
Defendants to arise out of the same conduct, there is no reason
to believe that Nurse Mayo or Nurse Feldman had notice, actual or
constructive, of Plaintiff's suit within the required 120-day
time period, which began to run on August 17, 2006 upon this
Court's Order directing service of Plaintiff's original
Complaint.  See Urrutia v. Harrisburg County Police Dep't, 91
F.3d 451, 453-54 (3d Cir. 1996).

     Knowledge cannot be imputed to Nurse Mayo or Nurse Feldman
via a "shared attorney" because, even if the Court assumes that
these new parties would have been represented by counsel for the
other CMS Defendants, CMS's counsel did not enter his appearance
until February 19, 2007, after the 120 day-period had run.  See
Singletary, 266 F.3d at 197 (concluding that notice was not
provided via "shared attorney" method for imputing notice where
attorney's representation of original defendants commenced after
the 120-day period).

     Similarly, the facts here do not suggest that there was
sufficient identity of interest between the CMS Defendants named
in the original Complaint and the two CMS nurses added in
Plaintiff's Amended Complaint to infer notice.  Plaintiff alleges
no facts regarding his contact with Nurse Mayo or Nurse Feldman
to suggest any reason to believe that these parties would be on
notice that Plaintiff had initiated suit against the other CMS
Defendants and that suit would likely be initiated against them
as well.  See id. at 197-99 (citing Ayala Serrano v. Lebron
Gonzalez, 909 F.2d 8, 13 (1st Cir. 1990) (imputing notice of
initiation of suit to previously unnamed prison guard was
reasonable where plaintiff had named the guard's superiors, guard
was present at alleged attack and guard continued to have regular
contact with plaintiff in Intensive Treatment Unit); Jacobsen v.
Osborne, 133 F.3d 315, 320 (5th Cir. 1998) (imputing notice of
initiation of suit to previously unnamed officers was reasonable
where city attorney would necessarily have investigated and
interviewed unnamed officers to answer Complaint)).  Said simply,
there is no allegation that either Nurse Mayo or Nurse Feldman
was present during any particular incident that is alleged to
have caused Plaintiff injury.  Nor is their any allegation that
these Nurses had regular contact with Plaintiff, which would
otherwise make their awareness of Plaintiff's suit more likely.

     For these same reasons, there was also no cause for Nurse
Mayo or Nurse Feldman to believe that, but for Plaintiff's
mistake, either Nurse would have been named in this litigation.
See Fed.R.Civ.P. 15(c)(1)(C)(ii).  And even though Plaintiff
identifies "John Does" as Defendants, which could indicate that
Plaintiff was mistaken regarding a defendant's identity, see
Singletary, 266 F.3d at 201, Plaintiff here had every opportunity
to conduct discovery to confirm that all proper defendants were

**C. Claims At Issue**

**1. State Defendants**

Plaintiff states cognizable claims against two separate groups of Defendants.  The State Defendants are administrators and corrections officers who work for the NJDOC:  J. Knowles ("Knowles"), the former Assistant Superintendent of New Jersey State Prison ("NJSP") (Knowles Decl. at ¶1);  L. Sherrer ("Sherrer"), Deputy Commissioner of the NJDOC Division of Operations and former Administrator of Northern State Prison ("NSP") (Sherrer Decl. at ¶1); L. Crenny ("Crenny"), Corrections Sergeant at Bayside State Prison ("BSP") (Crenny Decl. at ¶1); J. Caldwell ("Caldwell"), Senior Corrections Officer at BSP (Caldwell Decl. at ¶1); K. MacFarland ("MacFarland"), former Administrator of South Woods State Prison ("SWSP") (MacFarland Decl. at ¶1); A. Jalloh [6] ("Jalloh"), Associate Administrator of SWSP (Jalloh Decl. at ¶1); G. Eisinger ("Eisinger"), former Corrections Sergeant at SWSP (Eisinger Decl. at ¶1); J. Dice

---

identified.  See Garvin v. City of Philadelphia, 354 F.3d 215, 227-28 (3d Cir. 2003) (refusal to allow amendment of civil rights complaint warranted where plaintiff did not diligently seek to determine identity of defendants within limitations period).
        The Court also finds that, at this late date, the parties added in the Amended Complaint would be unfairly prejudiced if they were forced to prepare a defense regarding events that occurred well over four years ago. See Singletary, 266 F.3d at 194 n.3. (agreeing that a defendant, who received no notice of an action within requisite 120-day period and where events occurred more than four years ago, would suffer unfair prejudice).
[6]     The Court notes the discrepancy between the name "A. Jallot," as listed on the Court's Docket and the "A. Jalloh" as stated in Mr. Jalloh's Declaration.  The Court adopts the spelling "Jalloh" hereafter.

("Dice"), former Corrections Sergeant at SWSP (Dice Decl. at ¶1); C. McDowell ("McDowell"), Corrections Sergeant at SWSP (McDowell Decl. at ¶1), and J. Wehrwein[7] ("Wehrwein"), Senior Corrections Officer at SWSP (Wehrwein Decl. at ¶1).

**2.    CMS Defendants**

The CMS Defendants are nurses and doctors who work for Correctional Medical Services, Inc., a private corporation that provides and manages the medical care system for the NJDOC.   The CMS Defendants include: Registered Nurse S. Kudla ("Kudla"), Nurse Practitioner F. Green ("Green"), Registered Nurse T. Pipitione ("Pipitone"), Doctor N. Shah ("Shah"), and Registered Nurse D. Hollenbeck ("Hollenbeck").[8]

Both groups of Defendants filed prior Motions for Summary Judgment, [Docket Items 33, 93, 94], which the Court denied as premature [Docket Items 53, 110].   Discovery has now concluded,

---

[7]    The Court also notes the discrepancy between the name "Wehrwian" as listed on the Court's Docket and the name "Wehrwein" as stated in Mr. Wehrwein's Declaration.   The Court adopts the spelling "Wehrwein" hereafter.

[8]    The Court also notes that the Summons for Defendants Doctor Hellander and Nurse S. Kuhn were returned unexecuted because Doctor Hellander and Nurse Kuhn were "no longer employed" by CMS [Docket Item 27].   As previously noted, "proper service is a prerequisite to personal jurisdiction." Travillion, 248 Fed.Appx. at 337.   The Court further notes that Plaintiff was permitted to conduct discovery to ensure that all proper Defendants were identified.   Here, Plaintiff had an obligation to request information regarding Hellander's and Kuhn's whereabouts so as to effect proper service.   Plaintiff's failure to do so after several years of litigation would warrant dismissal of his claims as to these Defendants. See Rochon, 828 F.2d at 1110 ("plaintiff may not remain silent and do nothing to effectuate such service . . . a plaintiff should . . . attempt to remedy any apparent service defects of which a plaintiff has knowledge.").

and Defendants' Motions for Summary Judgment are ripe for review.

### D.   Motion for Temporary Restraining Order

On or about September 11, 2009, Plaintiff filed a Motion for Temporary Restraining Order and Motion for a Court Appointed Federal Investigator [Docket No. 156].  In this motion, Plaintiff stated several new claims.  Plaintiff sought emergency relief from a) the impairment of his religious freedom, b) discrimination based on disability and c) denial of access to medical devices.  Plaintiff also complained that he was exposed to second-hand smoke and has been denied "necessities" such as clean sheets, showers, yard, proper ventilation, heat, and clean drinking water.  Plaintiff also complains that he has been denied the right to purchase postage stamps.  (See Pl.'s Br. in Support of TRO Motion 1-3.)

### III.  Statement of Facts

In his Complaint and Amended Complaint, Plaintiff alleged numerous constitutional violations against both the State Defendants and the CMS Defendants.  Plaintiff's claims arise predominantly from three separate events.  The facts regarding these events, as derived from the parties' Rule 56.1 Statements, are set forth below.  See L. Civ. R. 56.1(a).

### A.  Transfer from NSP to BSP

On July 9, 2004, Defendant Sherrer, then Administrator of Northern State Prison ("NSP"), authored a memo to the inmate

9

population advising that "full minimum" inmates in the general
population would be transferred to Bayside State Prison ("BSP").
(Pl. SOF at ¶3[9]; State Def. SOF at ¶4.)  Plaintiff was
reclassified to full minimum status on November 16, 2004.  (Pl.
SOF at ¶5; State Def. SOF at ¶6.)  Plaintiff informed Defendant
Sherrer that he did not want to be placed in full minimum camp.
(Pl. SOF at ¶5.)  On January 14, 2005, Plaintiff submitted a
grievance to Defendant Sherrer requesting not to be transferred.
(Pl. SOF at ¶4.)  However, on January 19, 2005, Plaintiff was
transferred to BSP.  (Pl. SOF at ¶6; State Def. SOF at ¶7.)
Plaintiff alleges that the transfer was retaliation for a
grievance Plaintiff had filed against Defendant Sherrer.  (Pl.
Dep. 14:25 - 15:1, Nov. 7, 2007.)

**B.  February 3, 2005 Incident**

Plaintiff also alleges that on January 27, 2005, Defendant
Officer J. Caldwell subjected him to an arbitrary cell search.
(Pl. SOF at ¶7.)  Plaintiff filed a grievance and verbal
complaint regarding the search and claims that in retaliation for
this complaint, Caldwell arbitrarily searched Plaintiff's cell
again on February 3, 2005.  (Id.)

Defendants contend that when Caldwell conducted a routine
cell search on February 3, 2005, he was unable to unlock

---

[9]     Plaintiff filed his Statement of Material Facts as an
attachment to a Motion to Compel Discovery,[Docket Item No. 98],
presumably in response to Defendants' first Motion for Summary
Judgment. [Docket Item No. 93.]

Plaintiff's footlocker because there was something jammed inside
the lock's keyhole.  (State Def. SOF at ¶8.)  According to
Defendants, Plaintiff became loud and disruptive, shook his cane
at Caldwell and directed that Caldwell could not search
Plaintiff's property without a camera, a sergeant, and Plaintiff
present.  (State Def. SOF at ¶10.)  Defendants contend that the
footlocker lock had to be cut off because Plaintiff refused to
cooperate.  (State Def. SOF at ¶11.)  As a result of this
incident, Caldwell confiscated Plaintiff's lock and cane,
prepared confiscation paperwork, and issued three disciplinary
charges to Plaintiff.  (State Def. SOF at ¶¶14, 16.)

        After the altercation over the lock, Officers escorted
Plaintiff to the infirmary so that Plaintiff could be examined
prior to being placed in detention.  (Kemble Decl. in Support of
Motion to Seal Ex. A. at 3.)  Plaintiff claims that while he was
being carried to the infirmary in handcuffs, Defendant Crenny
assaulted him and used excessive force by bending his fingers
back.  (Pl. SOF at ¶9; Am. Compl. ¶13.)  Defendant Crenny denies
this allegation.  (Crenny Decl. at ¶5.)  Defendants claim that
during the escort, Plaintiff was loud and aggressive and
threatened to hurt Defendant Crenny "with or without a cane."
(State Def. SOF at ¶19.)

        Plaintiff was evaluated in the infirmary and then placed in
detention.  (Pl. SOF at ¶10.)  Defendants contend that Plaintiff
suffered no physical injury, as supported by the medical records

from February 3, 2005. (State Def. SOF at ¶25.) Those records state that there were "no visible injuries noted on [Plaintiff's] back or hands." (Kemble Decl. in Support of Motion to Seal Ex. A. at 3) Following the escort, Defendant Crenny prepared a special report and issued Plaintiff disciplinary charges for his threatening behavior. (State Def. SOF at ¶¶20-21.) Plaintiff contends that he was found not guilty of these charges. (Pl. SOF at ¶11.)

**C. March 17, 2005 Incident**

On March 17, 2005, Plaintiff was transferred to South Woods State Prison ("SWSP"). (Pl. SOF at ¶12; Def SOF at ¶26.) When Plaintiff arrived at SWSP, Defendant Sergeant Eisinger ordered Plaintiff to stand against the wall while his housing assignment was made. (State Def. SOF at ¶28.) Plaintiff alleges that Defendant Eisinger's orders were against his medical restrictions. (Pl. SOF at ¶12.) Plaintiff also claims that he held up his medical records and informed Defendant Eisinger that he could not stand for prolonged periods of time. (Pl. SOF at ¶13.) Eisinger allegedly verbally harassed him and called Defendant Dice to take Plaintiff to the detention holding cell. (Pl. SOF at ¶¶13-14.) Defendants contend that Plaintiff became loud and disruptive, which caused delays in religious services and inmate movements and resulted in closure of Facility Compound 3. (State Def. SOF at ¶¶ 29-30.)

Defendant J. Dice supervised Plaintiff's escort to the

holding cell.  (State Def. SOF at ¶32.)  While Plaintiff was in
the holding cell, he complained of chest pain and shortness of
breath and requested his asthma pump, which had been taken from
him.  (Pl. SOF at ¶15.)  Plaintiff claims that after making
several pleas for medical attention, he suffered an asthma attack
and fell to the floor.  (Pl. SOF at ¶16.)  Plaintiff alleges that
Dice then kicked Plaintiff.  (Pl. SOF at ¶16.)  Dice denies this
allegation.  (Dice Decl. at ¶3.)

    The medical staff was called to examine Plaintiff, who was
taken to the emergency room and was found to have suffered an
acute asthma attack.  (Pl. SOF at ¶17; Def. SOF at ¶44.)
Plaintiff's medical records indicate that when the medical staff
responded to the call, Plaintiff complained of chest pain, was
hostile and uncooperative.  (Def. SOF at ¶42; CMS Def. Br. Ex. A.
at p. EMR - 000211.)  Defendants contend that there are no
medical records that support Plaintiff's allegation that
Defendant Dice assaulted him.  (Def. SOF at ¶43.)

    After the incident, Defendant Eisinger wrote a preliminary
incident report and issued Plaintiff two disciplinary charges for
"refusing to accept a housing assignment" and "conduct which
disrupts."  (Def. SOF at ¶¶34-35; Pl. SOF at ¶19.)  Defendant
Dice wrote a special report detailing the escort and noted that
Plaintiff stated that "his lawyer was the Attorney General and
would sue all of [them]."  (Def. SOF at ¶33.)

13

A hearing was held to adjudicate the charges issued by Defendant Eisinger.  (Def. SOF ¶36.)  Plaintiff alleges that during this hearing, video tapes and medical restrictions were ignored and unconstitutional procedures were used to arbitrarily find Plaintiff guilty.  (Pl. SOF at ¶20.)  The hearing officer found Plaintiff guilty of refusing to accept a housing assignment and imposed sanctions of 60 days loss of commutation time, 90 days administrative segregation and 15 days detention, but suspended the administrative segregation time for 60 days.  (Pl. SOF at ¶21; Def. SOF at ¶37.)

Plaintiff appealed this ruling to the SWSP Administration, arguing that the procedures used were unconstitutional.  (Def. SOF at ¶38-39.)  On or about April 2005, Defendant Jalloh, an Assistant Superintendent at SWSP, considered Plaintiff's appeal and upheld the guilty findings.  (Pl. SOF at ¶22, Def. SOF at ¶38-40.)  Plaintiff then appealed Defendant Jalloh's administrative ruling to the Superior Court of New Jersey, Appellate Division, which ultimately upheld the decision.  (Pl. SOF at ¶23.)

Plaintiff contends that on July 12, 2005, Defendant Jalloh retaliated against him for appealing to the Appellate Division by threatening to have him placed in detention if he filed another appeal.  (Am. Compl. at ¶18.)

**D.   Other Retaliation Claims**

14

In addition to the retaliation claims in connection with the incidents discussed above, Plaintiff alleges separate instances of retaliation by Defendants:

1) In April 2005 and again on June 9, 2005, after he filed a grievance against Defendant J. Wehrwein for searching his cell, Wehrwein retaliated by searching his cell a second time. (Pl. SOF at ¶24.)

2) In or about July 2005, Defendant Dice authored a charge in retaliation for Plaintiff's appeal of the charges brought by Defendant Dice regarding the March 17, 2005 incident. (Pl. SOF at ¶26.)

3) Defendant McDowell refused to allow Plaintiff access to religious prayer services on or about September 16, 2005 and hindered Plaintiff's legal mail from being sent out on or about October 27, 2005 in retaliation for a grievance and civil action that Plaintiff filed against McDowell in 1999. (Am. Compl. at ¶20; Pl. SOF at ¶32.) Defendants contend that McDowell never denied Plaintiff access to religious services or interfered with his mail. (Def. SOF at ¶55.)

4) Defendant Eisinger retaliated against him for filing grievances by filing a charge against Plaintiff on or about November 2005 that was later dismissed. (Pl. SOF at ¶27.)

5) After Plaintiff complained about the violations of his privacy rights regarding his medical information, his medical restrictions were deleted from the computer and changed from "no

15

prolonged standing" to "15 minute standing".  (Am. Compl. at
¶27.)  This allegation was not directed at any particular
defendant.

### E.  Violations of Privacy Rights

Plaintiff also makes a variety of claims that Defendants
violated his medical privacy.  Plaintiff alleges that the State
Defendants violated his medical privacy rights as follows:
Defendant Sherrer allowed open door medical exams (Am. Compl. at
¶10); Defendant MacFarland permitted a policy of open door
medical examinations (Am. Compl. at ¶17(a)); Defendant McDowell
intentionally read Plaintiff's medical records on October 7, 2005
(Am. Compl. at ¶20); Defendant Wehrwein read Plaintiff's medical
records and legal papers while conducting a search of Plaintiff's
cell (Am. Compl. ¶21).

Plaintiff also alleges that the CMS Defendants have
repeatedly violated his privacy rights since March 17, 2005 by
talking about his medical information in open examination rooms
with corrections officers working in the area.  (Am. Compl. at
¶26).  Specifically, Plaintiff alleges that on March 17, 2005,
Defendant Nurse Kudla spoke out loud about Plaintiff's medical
information in front of non-medical staff.  (Pl. SOF at ¶29).
Plaintiff also alleges that Nurse Hollenbeck put a medical slip
requesting a throat specialist for Plaintiff on a corrections
officer's desk (Am. Compl. at ¶ 27) and that Dr. Shah called an

officer to the door and spoke loudly about Plaintiff's medical condition.  (Pl. Dep. 127:7 - 128:8.)


**F.   Wrongful Termination in Violation of the ADA**

On April 14, 2005, Plaintiff filed a grievance which alleged that he was wrongfully terminated from his job in the dining hall because he uses a cane.  (MacFarland Decl. Ex. B; Pl. SOF at ¶31).  On April 19, 2005, Associate Administrator Balicki responded and stated that Plaintiff would be given a new job assignment.  (MacFarland Decl. Ex. B; Def. SOF at ¶53.) Plaintiff claims that this grievance placed the prison administrator, MacFarland, on notice of violations that occurred in the prison.  (Pl. SOF at ¶31.)

**IV. Plaintiff's Motion for Reconsideration**

As noted, Plaintiff's request for reconsideration of this Court's August 17, 2006 Order was incorrectly docketed as a letter [Docket Item No. 9].  The error was discovered when Plaintiff questioned why his Motion for Reconsideration was never addressed in a Motion to Appoint Counsel [Docket Item No. 127]. Accordingly, this Court now considers the merits of Plaintiff's request for reconsideration.

**A.   Standard**

Motions for reconsideration are not expressly recognized in the Federal Rules of Civil Procedure.  <u>United States v.</u>

17

Compaction Systems Corp., 88 F.Supp.2d 339, 345 (D.N.J. 1999).
Generally, a motion for reconsideration is treated as a motion to
alter or amend judgment under Fed.R.Civ.P. 59(e), or as a motion
for relief from judgment or order under Fed.R.Civ.P. 60(b).  Id.
In the District of New Jersey, Local Civil Rule 7.1(I) governs
motions for reconsideration.  Bowers v. Nat'l Collegiate
Athletics Ass'n, 130 F.Supp.2d 610, 612 (D.N.J. 2001).

     Local Civil Rule 7.1(I) permits a party to seek
reconsideration by the Court of matters "which [it] believes the
Court has overlooked" when it ruled on the motion.  L.Civ.R.
7.1(I); see NL Industries, Inc. v. Commercial Union Ins., 935
F.Supp. 513, 515 (D.N.J. 1996).  The standard for re-argument is
high and reconsideration is to be granted only sparingly.  See
United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994).

     The movant has the burden of demonstrating either: "(1) an
intervening change in the controlling law; (2) the availability
of new evidence that was not available when the court [issued its
order]; or (3) the need to correct a clear error of law or fact
to prevent manifest injustice."  Max's Seafood Café v. Quinteros
ex rel. Lou-Ann, Inc., 176 F.3d 669, 677 (3d Cir. 1999) (citing
N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218
(3d Cir. 1995)).  The Court will grant a motion for
reconsideration only where its prior decision has overlooked a
factual or legal issue that may alter the disposition of the
matter.  Compaction Systems Corp., 88 F.Supp.2d at 345; see also

18

L.Civ.R. 7.1(I).  "The word 'overlooked' is the operative term in the Rule."  Bowers, 130 F.Supp.2d at 612 (citation omitted); see also Compaction Systems Corp., 88 F. Supp. 2d at 345.

Ordinarily, a motion for reconsideration may address only those matters of fact or issues of law which were presented to, but not considered by, the court in the course of making the decision at issue.  See SPRIG v. Monsanto Co., 727 F.Supp. 876, 878 (D.N.J.), aff'd, 891 F.2d 283 (3d Cir. 1989).  Thus, reconsideration is not to be used as a means of expanding the record to include matters not originally before the court. Bowers, 130 F.Supp.2d at 613; Resorts Int'l v. Greate Bay Hotel & Casino, Inc., 830 F.Supp. 826, 831 & n.3 (D.N.J. 1992); Egloff v. N.J. Air Nat'l Guard, 684 F.Supp. 1275, 1279 (D.N.J. 1988).

Absent unusual circumstances, a court should reject new evidence which was not presented when the court made the contested decision.  See Resorts Int'l, 830 F.Supp. at 831 n.3. A party seeking to introduce new evidence on reconsideration bears the burden of first demonstrating that evidence was unavailable or unknown at the time of the original hearing.  See Levinson v. Regal Ware, Inc., Civ. No. 89-1298, 1989 WL 205724 at *3 (D.N.J. Dec. 1, 1989).

Moreover, L.Civ.R. 7.1(I) does not allow parties to restate arguments which the court has already considered.  See G-69 v. Degnan, 748 F.Supp. 274, 275 (D.N.J. 1990).  Thus, a difference of opinion with the court's decision should be dealt with through

19

the normal appellate process.  <u>Bowers</u>, 130 F.Supp.2d at 612
(citations omitted); <u>Florham Park Chevron, Inc. v. Chevron</u>
<u>U.S.A., Inc.</u>, 680 F.Supp. 159, 162 (D.N.J. 1988); <u>see also</u>
<u>Chicosky v. Presbyterian Medical Ctr.</u>, 979 F.Supp. 316, 318
(D.N.J. 1997); <u>NL Industries, Inc.</u>, 935 F.Supp. at 516
("Reconsideration motions . . . may not be used to re-litigate
old matters, or raise arguments or present evidence that could
have been raised prior to the entry of judgment.").  In other
words, "[a] motion for reconsideration should not provide the
parties with an opportunity for a second bite at the apple."
<u>Tischio v. Bontex, Inc.</u>, 16 F.Supp.2d 511, 533 (D.N.J. 1998)
(citation omitted).

**B. Analysis**

Plaintiff filed a Motion for Reconsideration seeking review
of the Court's August 17, 2006 Order and in such Motion attached
an Amended Complaint.  The Amended Complaint re-stated several
claims that the Court dismissed.  However, Plaintiff's Motion is
premised solely on an equitable tolling argument, which of course
is applicable only to claims previously dismissed as time-barred.
Because Plaintiff states no other basis for reconsideration, the
Court will not re-visit claims previously dismissed on their
merits.  Plaintiff's claims against Defendants Brown, Blakesee,
Sheppard, Meehan and Ireland remain dismissed with prejudice for
the reasons set forth in the Court's August 17, 2006 Opinion.

Nor will the Court reconsider Plaintiff's claims against Defendants D'Amico, Dowlin and Oskay regarding restoration of commutation credits and denial of parole.  The Court dismissed these claims without prejudice and instructed that Plaintiff's sole federal remedy for these claims was a writ of *habeas corpus* filed upon the exhaustion of all available state remedies.  August 17, 2006 Opinion at 56.  Plaintiff's original Complaint clearly indicated that an appeal regarding these claims was still pending.  (Compl. ¶54.)  Plaintiff's Amended Complaint stated that the Appellate Division did not receive this appeal and instructed Plaintiff to re-file the appeal *nunc pro tunc*.  (Am. Compl. ¶25.)  Because it remains unclear whether Plaintiff re-filed his appeal, or that he has otherwise exhausted all available state remedies, Plaintiff's claims concerning commutation credit and parole denial remain dismissed without prejudice.

Finally, the Court turns to Plaintiff's equitable tolling argument.  Plaintiff contends that the limitations period for his time-barred claims should be equitably tolled because he first stated these claims in a Complaint filed on or about August 15, 2003.  See Doe v. Knowles, et al., Civ. No. 03-3956 (D.N.J. Aug. 15, 2003).  This 2003 Complaint was dismissed without prejudice on February 8, 2005.  Plaintiff argues that he "believed [that] by noting in the [December 28, 2005] Complaint (Kwanzaa v. Brown, 05-5976) the same claims and defendants [sic] that this case

21

would be viewed as a <u>continuation</u>" of the first Complaint. (Pl.'s Motion for Reconsideration Br. at 2, emphasis in original.)

Plaintiff argument raises no new issues.  The Court took note of Plaintiff's August 2003 action before Judge Thompson in its August 17, 2006 Opinion, <u>see</u> Opinion at 3, and rejected application of the equitable tolling doctrine to Plaintiff's time-barred claims.  <u>See</u> Opinion at 25-27.  Nonetheless, in light of Plaintiff's *pro se* status and novel "continuation" argument regarding his earlier filed Complaint, the Court will address the merits of Plaintiff's equitable tolling argument.

As noted in the Court's August 17, 2006 Opinion, Plaintiff must have commenced his civil rights action within two years of any alleged wrongful acts to avoid the statue of limitations applicable to § 1983 claims.  <u>See</u> <u>Cito v. Bridgewater Township Police Dep't</u>, 892 F.2d 23, 25 (3d Cir. 1989); <u>Brown v. Foley</u>, 810 F.2d 55, 56 (3d Cir. 1987).  Plaintiff submitted the Complaint before this Court on or about December 28, 2005.  Based on this date, the Court dismissed several of Plaintiff's claims as untimely: (1) Plaintiff's complaint that he was denied access to the courts when his state court appeal was dismissed as untimely, alleged to have occurred between May 2002 and December 9, 2002; (2) Plaintiff's denial of medical care, retaliation and right to privacy claims asserted against Defendants employed at East Jersey State Prison ("EJSP"), which must have occurred prior to

22

Plaintiff's transfer from EJSP in April 2002; (3) Plaintiff's
claim against Defendant Knowles arising from a December 2002
transfer; and (4) Plaintiff's claims against Defendants Sheppard
and Meehan arising from proceedings that took place in August
1999, March 2001 and April 2002.

   Plaintiff's August 13, 2003 Complaint also stated the above
listed claims.  This 2003 Complaint was dismissed without
prejudice on February 8, 2005 for failure to comply with
Fed.R.Civ.P. 8(a)(2).  [See Doe v. Knowles, Civ. No. 03-3956,
Docket Item 11.]  Rather than file an amended complaint that
complied with the Rules of Federal Procedure, Plaintiff chose to
timely appeal the 2003 Complaint's dismissal. [Doe v. Knowles,
Civ. No. 03-3956, Docket Items 16 and 17.]  However, the Appeal
was dismissed on June 6, 2005 due to Plaintiff's failure to
prosecute.  [Doe v. Knowles, Civ. No. 03-3956, Docket Item 21.]
After the dismissal of his appeal, Plaintiff waited another six
months before filing a brand new Complaint.

   New Jersey law permits equitable tolling where "the
complainant has been induced or tricked by his adversary's
misconduct into allowing the filing deadline to pass." Freeman v.
State, 347 N.J. Super. 11, 31 (App. Div.) (quoting Dunn v. Borough
of Mountainside, 301 N.J. Super. 262, 301 (App. Div. 1997)),
certif. denied, 172 N.J. 178 (2002).  Alternatively, courts may
apply equitable tolling "where a plaintiff has 'in some
extraordinary way' been prevented from asserting his rights."  Id.

(quoting United States v. Midgley, 142 F.3d 174, 179 (3d Cir.
1998)). "[E]quitable tolling may also be appropriate where a
plaintiff has timely asserted his rights mistakenly by either
defective pleading or in the wrong forum." Id. (citing Midgley,
142 F.3d at 179)).

However, to benefit from the doctrine of equitable tolling,
Plaintiff needed to exercise "reasonable diligence" to pursue his
rights and protect his claims. Merritt v. Blaine, 326 F.3d 157,
168 (3d Cir.), cert. denied, 540 U.S. 921 (2003). Even excusable
neglect does not warrant application of the doctrine. Miller v.
N.J. Dep't of Corrections, 145 F.3d 616, 619 (3d Cir. 1998)(citing
Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990); New
Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1126 (3d
Cir. 1997)). Waiting several months to re-file claims that were
otherwise time-barred was not reasonable diligence on Plaintiff's
part.

Plaintiff appears to argue either that an "extraordinary"
event has prevented him from timely asserting his rights or that
he mistakenly believed he had asserted his rights. The Court
recognizes that Plaintiff could be heard to argue that he was
"extraordinarily" prevented from timely asserting his claims
because the limitations period for several claims had expired by
the time his 2003 Complaint was screened and dismissed on February
8, 2005. However, the Third Circuit instructs that where an in
forma pauperis plaintiff submits a complaint within the

24

limitations period, the time period for relation back is suspended
until the court screens the complaint and orders the complaint
filed.  Therefore, an amendment of the original pleading would not
be barred where the limitations period expired after the pleading
was filed but before the complaint was permitted to proceed.
Urrutia, 91 F.3d at 453-54.

     Plaintiff here essentially had 120 days from the dismissal of
his 2003 Complaint to file an amended complaint and preserve his
claims.  See Fed.R.Civ.P. 15(c).  However, Plaintiff never filed
an Amended Complaint; he filed a new Complaint ten months later on
December 2005.  Even if this Court were to construe the December
Complaint as an Amended Complaint, Plaintiff simply waited too
long for the second pleading to relate back to the first.

     Similarly, Plaintiff cannot be heard to argue that he
mistakenly believed that his claims were preserved.  Although
Plaintiff appears to contend that he was "induced and tricked"
into believing that this Complaint was filed and proceeding, in
the very same sentence he states that he believed he could "re-
file the same claims and defendants [sic] because the case was
dismissed without prejudice."  (Pl.'s Motion for Reconsideration
Br. At 2.)  Plaintiff clearly understood that he could have filed
an amended complaint.  But Plaintiff could not wait indefinitely
to re-file in light of an expiring statute of limitations.  Ten
months after these claims were originally dismissed was simply too

25

long to wait, and the doctrine of equitable tolling does not offer Plaintiff relief.

For the foregoing reasons, Plaintiff's Motion for Reconsideration is denied.

**V.   Defendants' Summary Judgment Motions**[10]

Three Motions for Summary Judgment were filed, two by the State Defendants and one by the CMS Defendants.

**A.   Standard**

Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); Hersh v. Allen Products Co., 789 F.2d 230, 232 (3d Cir. 1986).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[A]t the summary judgment stage the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.

_____

[10]   Defendants' Motions to Seal Plaintiff's medical records, unopposed by Plaintiff, are hereby granted [Docket Items 135, 144 and 162].  The Court finds that, in light of the sensitive nature of Plaintiff's medical records, Plaintiff's legitimate privacy interest, the serious harm to such interest which would result if Defendants' Motion were not granted, and in the absence of a less restrictive alternative, good cause has been established for sealing these documents.  See L. Civ. R. 5.3(c).

"In making this determination, a court must make all reasonable inferences in favor of the non-movant." <u>Oscar Mayer Corp. v. Mincing Trading Corp.</u>, 744 F.Supp. 79, 81 (D.N.J. 1990) (citing <u>Meyer v. Riegel Prods. Corp.</u>, 720 F.2d 303, 307 n.2 (3d Cir. 1983)).  However, "the party opposing summary judgment 'may not rest upon the mere allegations or denials of the...pleading'; its response, 'by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.'" <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001) (quoting Fed.R.Civ.P. 56(e); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

B.   **Analysis**

Plaintiff states claims for violations of his civil rights pursuant to 42 U.S.C. § 1983.  Therefore, Plaintiff must satisfy a two-prong test:  1) he must show that the conduct complained of was committed by a person acting under color of state law, and 2) he must establish that the conduct deprived him of rights guaranteed by federal law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).  The parties do not dispute that the Defendants were acting under color of law.  Thus, the question presented is whether Plaintiff was deprived of any federal rights.

1.   **Plaintiff's Claims Against NJ DOC Administrators**

Plaintiff states several claims against Defendants Sherrer,

27

Knowles and MacFarland (collectively the "Supervisor Defendants"), each of whom served as administrators or supervisors in the New Jersey prison system. Plaintiff makes the following claims against Sherrer: (1) Sherrer allowed a policy of open door medical exams in violation of Plaintiff's privacy rights, (2) Sherrer refused Plaintiff access to medical devices (3) Sherrer had Plaintiff arbitrarily transferred to a different prison in retaliation for Plaintiff having named Sherrer in a civil action; (4) Sherrer refused to address numerous grievances filed by Plaintiff. (Am. Compl. at ¶10.)

Plaintiff makes the following claims against Defendant Knowles: (1) Knowles had Plaintiff arbitrarily transferred to a different prison in retaliation for Plaintiff having named Knowles in a civil action; (2) Knowles threatened Plaintiff and had Plaintiff placed in detention because Plaintiff threatened to file an action against Knowles; (3) Knowles allowed a policy of open door medical exams in violation of Plaintiff's privacy rights; (4) Knowles refused Plaintiff access to medical devices; (5) Knowles denied Plaintiff access to the courts by denying Plaintiff's requests for a trained paralegal. (Am. Compl. at ¶11.)

Plaintiff makes the following claims against Defendant MacFarland: (1) MacFarland ignored various grievances filed by Plaintiff; (2) MacFarland allowed a policy of open door medical exams in violation of Plaintiff's privacy rights; (3) MacFarland refused Plaintiff access to medical devices; (4) MacFarland

28

permitted unconstitutional procedures in prison disciplinary
hearings; (5) MacFarland violated Plaintiff's medical restrictions
by permitting Defendant Eisinger to require Plaintiff to stand by
a wall beyond his physical capability; (6) MacFarland violated the
Americans with Disabilities Act ("ADA") by reassigning Plaintiff's
prison jobs based on Plaintiff's disability; (7) MacFarland
wrongfully maintained a prison policy prohibiting "keep on person"
medications while prisoners are in detention; and (8) MacFarland
wrongfully refused to install prison video cameras.  (Am. Compl.
¶17).

Defendants contend that these claims must be dismissed
because liability under § 1983 cannot be premised upon a theory of
*respondeat superior*.  Plaintiff counters that he placed these
Defendants on notice of various violations by filing grievances
and, therefore, they had actual knowledge of and acquiesced to the
alleged wrongful conduct of which Plaintiff complains.

Defendants, however, cannot be held liable under § 1983 for
merely failing to respond to Plaintiff's grievances.  Bobko v.
Lavan, 157 Fed.Appx. 516, 518 (3d Cir. 2005).  And "knowledge" of
a subordinate's alleged wrongful conduct does not establish § 1983
liability for a supervisor absent some personal involvement in the
alleged wrong by the supervisor.  A plaintiff must establish "that
each Government-official defendant, through the official's own
individual actions, has violated the Constitution."  Ashcroft v.

Iqbal, 129 S. Ct. 1937, 1948-49 (2009).  In other words,
"Government officials may not be held liable for the
unconstitutional conduct of their subordinates under a theory of
*respondeat superior*."  Id. At 1948.

Plaintiff points to no personal conduct on the part of
Sherrer, Knowles or MacFarland that deprived Plaintiff of any
constitutional right.  To the extent Plaintiff alleges that
Defendant MacFarland was personally involved in wrongfully
terminating him from a prison job because he ambulates with a
cane, MacFarland certified that Plaintiff's work assignments "were
made by the Institutional Placement Committee using the criteria
found at N.J.A.C. 10A:9-3.8."  MacFarland Decl. ¶10.

The closest Plaintiff comes to alleging personal involvement
in an alleged wrong by one of the supervisor Defendants is his
charge that Knowles threatened Plaintiff and placed him in
detention because Plaintiff threatened to name Knowles in a civil
action.  (Am. Compl. ¶11.)  However, any claim arising out of
Plaintiff's placement in detention on or about May 7, 2003 is
time-barred since Plaintiff did not commence suit until December
28, 2005.  See Cito, 892 F.2d at 25.  Plaintiff's claim also fails
on its merits.  "A prisoner alleging retaliation must show (1)
constitutionally protected conduct, (2) an adverse action by
prison officials sufficient to deter a person of ordinary firmness
from exercising his constitutional rights, and (3) a causal link

between the exercise of his constitutional rights and the adverse action taken against him." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (citation omitted).  Prison officials may refute a retaliation claim "by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to legitimate penological interests." Powell v. Beard, 288 Fed.Appx. 7, 8 (3d Cir. 2008)(quoting Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001)).

Plaintiff's right to file grievances is guaranteed by the First Amendment. Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983).  Plaintiff's placement in administrative detention, together with the threat of such placement, could qualify as adverse actions.  Cf. Gay v. City of Philadelphia, 2005 WL 1844407, at *5 (E.D.Pa. Aug. 2, 2005) (allegation that a defendant threatened plaintiff, without accompanying allegation that defendant carried through on the threat, does not qualify as adverse action), aff'd, 205 Fed.Appx. 931 (3d Cir. 2006).

Here, however, Plaintiff fails to offer any evidence from which a jury could infer a causal link between his placement in detention on May 7, 2003 and Plaintiff's filing of a Complaint against Knowles in 1998.  See Krouse v. American Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997) ("timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred").  Plaintiff testified at his deposition that Knowles sentenced Plaintiff to 15

days in detention based on disciplinary charges filed against
Plaintiff.  (Pl. Dep. 57:8 - 58:5.)  No reasonable jury could
conclude that Plaintiff received this sentence in retaliation for
filing a Complaint against Knowles five years earlier.

As for Plaintiff's retaliation claims against Defendants
Sherrer and Knowles based on prison transfers, these claims were
previously dismissed.  See June 15, 2007 Opinion at 19 [Docket No.
52].  Prison officials have broad discretion to transfer an inmate
from one institution to another, even where the degree of
confinement in one prison may differ.  Meachum v. Fano, 427 U.S.
215, 224-25 (1976).

To the extent Plaintiff attempts to state a claim that the
Supervisor Defendants "acquiesced" to unconstitutional policies,
Plaintiff needed to establish that these Defendants were
deliberately indifferent to the risk that Plaintiff would suffer
constitutional injury.  Sample v. Diecks, 885 F.2d 1099, 1118 (3d
Cir. 1989).  Plaintiff was required to show that "(1) existing
policy or practice create[d] an unreasonable risk of Eighth
Amendment injury; (2) the supervisor was aware that the
unreasonable risk was created; (3) the supervisor was indifferent
to that risk; and (4) the injury resulted from the policy or
practice."  Heggenmiller v. Edna Mahan Correctional Inst. for
Women, 128 Fed.Appx. 240, 246-47 (3d Cir. 2005) (citing Sample,
885 F.2d at 1118).

32

To prove the existence of an "unreasonable risk," of constitutional injury, Plaintiff needed to present "evidence that such harm has in fact occurred on numerous occasions" and "the supervisory official failed to respond appropriately in the face of such injuries." Sample, 885 F.2d at 1118.  Of course there are also egregious cases where "the risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of supervisory officials to respond will alone support findings of the existence of unreasonable risk, of knowledge of that unreasonable risk, and of indifference to it." Id.  This is not such a case.

Here, Plaintiff suffered no constitutionally cognizable harm. Prisoners surrender many liberties and privileges otherwise afforded to citizens. Overton v. Bazzetta, 539 U.S. 126, 131 (2003).  The State may maintain prison regulations that impinge on an inmate's constitutional rights where such regulations reasonably relate to a legitimate, penological purpose.  Turner v. Safley, 482 U.S. 78, 89-90 (1987).  When considering whether a regulation reasonably relates to a legitimate goal, the Court considers (1) whether there is rational connection between the regulation and a "legitimate governmental interest" such that "the asserted goal is so remote as to render the policy arbitrary or irrational;" (2) whether alternative means of exercising the right exist that remain open to inmates (3) the impact accommodation of

33

the right will have on guards, other inmates, and prison resources
and (4) "the absence of ready alternatives."  Id.

     The State Defendants certify that prison policy limiting
access to medical devices and "keep on person" medication in
administrative detention or segregation, assigning guards to
monitor medical areas and requiring guards to escort medical
personnel are necessary security measures.  See MacFarland Decl.
¶¶3-7.  Recognizing that the State has an important and
substantial interest in the security and order of its prison
facilities, see Procunier v. Martinez, 416 U.S. 396, 412-14
(1974), the Court finds that the policies in question rationally
relate to a legitimate, government interest.

     Moreover, there is simply no record evidence to suggest any
pattern or history of constitutional injury or Defendants' failure
to respond to same.  Plaintiff has not shown, and no reasonable
jury could conclude, that Defendants acquiesced to any existing
policy or practice that created an unreasonable risk of
constitutional injury.

     Plaintiff's claims against Defendants Sherrer, Knowles and
MacFarland fail as a matter law.  Summary judgment is granted in
Defendants' favor.

### 2.   Plaintiff's Retaliation Claims

     Plaintiff makes numerous, cognizable claims that he suffered
retaliation for filing grievances and lawsuits.  Specifically,
Plaintiff alleges the following: (1) Defendant Caldwell subjected

Plaintiff to cell searches, disciplinary charges and confiscated Plaintiff's cane because Plaintiff filed grievances (Am. Compl. ¶12); (2) Defendant Crenny filed disciplinary charges against Plaintiff because Plaintiff threatened to bring suit against Crenny (Am. Compl. ¶13); (3) Defendant Jalloh threatened to place Plaintiff in detention because Plaintiff appealed Jalloh's holdings (Am. Compl. ¶18); (4) Defendant Dice filed a false charge against Plaintiff because Plaintiff named Dice in litigation (Am. Compl. ¶18); (5) Defendant Eisinger filed false disciplinary charges against Plaintiff in retaliation for Plaintiff's refusal to comply with Eisinger's orders (Am. Compl. ¶19); (6) Defendant McDowell refused Plaintiff access to religious services in retaliation for Plaintiff having filed a grievance and lawsuit against McDowell (Am. Compl. ¶20); and (7) Defendant Wehrwein subjected Plaintiff to arbitrary cell searches and filed an intimidating charge against Plaintiff because Plaintiff filed grievances and a lawsuit against Wehrian.[11] (Am. Compl. ¶21).

---

[11]    Plaintiff's Complaint and Amended Complaint also allege instances of retaliation by Defendant D. Ayers, specifically that Ayers filed false disciplinary charges against Plaintiff and confiscated Plaintiff's cane because Plaintiff complained that Ayers was trying to listen to conversations between Plaintiff and medical staff. (Am. Compl. ¶14.) The Court reviewed and permitted Plaintiff's claims against Defendant Ayers in its August 17, 2006 screening opinion and directed the Clerk of the Court to serve Plaintiff's Complaint on all Defendants whose claims had not been dismissed. However, it appears that Defendant Ayers was never served. Because Ayers was never served, he never became a proper party to this case. See Travillion, 248 Fed.Appx. at 337.
    Plaintiff never raised this issue in any of his numerous pleadings and, as previously noted, moved for default no less

Defendants contend that all of these claims must fail because Plaintiff cannot state a *prima facie* case for retaliation.

As was stated in the previous section, "[a] prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mitchell, 318 F.3d at 530.   The Court also notes that "retaliation may be actionable, however, even when the retaliatory action does not involve a liberty interest." Allah v. Seiverling, 229 F.3d 220, 224 (3d Cir. 2000). "Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional

---

than four times without asking that default be entered against Defendant Ayers. [Docket Items 13, 24, 30, 80.] The Court finds that Plaintiff had a responsibility to pursue his claims against Defendant Ayers.

The Court further notes that to the extent Plaintiff states a claim against Ayers based on the filing of false disciplinary charges, such actions would not constitute a constitutional violation so long as procedural due process protections were in place. See Richardson v. Sherrer, Civ. No. 09-1966, 2009 WL 2903657, at *2 (3d Cir. Sept. 11, 2009). Plaintiff does not allege that he was denied a hearing or was otherwise prevented from challenging the alleged false charges. Therefore, even if the Court were to entertain Plaintiff's false charges claim, the claim would be dismissed.

As for Plaintiff's allegation that Defendant Ayers refused to return Plaintiff's cane, Plaintiff points to no record fact to support this allegation. Plaintiff's failure to pursue his claim against Ayers after three years of litigation would severely prejudice his claim even were the claim properly before this Court.

torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Id. (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 386 (6th Cir. 1999)).

Once a plaintiff establishes the three, necessary elements for a retaliation claim, "[t]he burden then shift[s] to the defendant to prove by a preponderance of the evidence that it would have taken the same disciplinary action even if the absence of the protected activity." Rauser, 241 F.3d at 333-34.  Prison officials may refute a retaliation claim "by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to legitimate penological interests." Powell, 288 Fed.Appx. at 8(citing Rauser, 241 F.3d at 334).

Plaintiff's right to file grievances is constitutionally protected activity. Bill Johnson's Restaurants, Inc., 461 U.S. at 741.  The record here also indicates that Plaintiff suffered what could be construed as adverse actions by certain Defendants, specifically cell searches and confiscation of his cane. See, e.g., Hudson v. Palmer, 468 U.S. 517, 529 (1984)(searches conducted as "calculated harassment unrelated to prison needs" may violate the Eighth Amendment); Atkinson v. Taylor, 316 F.3d 257, 266 (needless suffering resulting from denial of simple medical care violates the Eighth Amendment).  However, to prevail, Plaintiff must demonstrate that the grievances or lawsuits he filed were "a substantial or motivating factor" that brought about the alleged adverse actions. Rauser, 241 F.3d at 333.  Plaintiff

37

simply fails to proffer any record fact, beyond his own
allegations, from which a reasonable jury could infer a causal
link between the exercise of his right to file grievances and the
alleged adverse actions taken against him.

### a.   Retaliation Claims Based on Threats

As previously noted, claims based on threats of disciplinary
action, absent an accompanying allegation that the threats were
carried out by Defendants, do not qualify as "adverse actions" for
purposes of a retaliation claim.  See Gay, 2005 WL 1844407, at *5.
(allegation that a defendant threatened plaintiff, without
accompanying allegation that defendant carried through on the
threat, does not qualify as adverse action).  For this reason,
Plaintiff's retaliation claims, based on threats alone, fail as a
matter of law.

The Court also notes that Plaintiff has continued to pursue
grievances and litigation against prison officials, suggesting
that the alleged threats were not sufficient to deter a person of
ordinary firmness from exercising his constitutional rights.

### b.   Retaliation Claims Based on Cell Searches

Plaintiff's retaliation claims based on cell searches also
fail.  Plaintiff alleges that Defendant Caldwell[12] searched his

---

[12]    Plaintiff identifies the offending officer as Defendant
Crenny at his deposition, but his Amended Complaint and Statement
of Material Facts identify Defendant Caldwell as having conducted
the retaliatory search.  Compare Pl.'s Dep. 65:8-68:9 with Am.
Compl. ¶12; Pl.'s SOF ¶7.  Similarly, Plaintiff identifies
Defendant Caldwell as the officer who assaulted Plaintiff on
February 3, 2005 at his deposition, although Plaintiff identified

38

cell on January 27, 2005 and February 3, 2005 in retaliation for
grievances filed by Plaintiff. (Am. Compl. ¶12.) Plaintiff
claims that the January search was conducted in retaliation for an
earlier filed grievance. However, Plaintiff failed to
specifically identify the grievance which he claims led to the
search. Plaintiff simply alleges that Caldwell "subjected me to
an arbitrary cell search after I had submitted a grievance prior
to that." Pl.'s Dep. at 65:8-11. Moreover, Plaintiff admits that
he did not identify Caldwell in this grievance. Pl.'s Dep. at
65:12-66:1. ("However, I did not make a note of his name. I just
put the administration on notice of possible retaliation.")
Defendant Caldwell responds that his regular duties require him to
search the cells of inmates assigned to his unit and that all
searches are conducted in accordance with New Jersey law.
Caldwell Decl. at ¶2.

Plaintiff, who has had over three years to conduct discovery,
offers nothing to refute this contention. Plaintiff cannot rely
solely on his allegation that the search was conducted in response
to an earlier filed grievance to establish the causation element
for a retaliation claim. See Fed.R.Civ.P. 56(e)(2). In the
absence of any evidence from which a reasonable jury could
conclude that the cell searches were retaliatory, summary judgment

the officer as Defendant Crenny in his Amended Complaint and
Statement of Facts. Compare Pl.'s Dep. 68:10-69:14 with Am.
Compl. ¶13; Pl.'s SOF ¶¶ 9-11. Given the similarity between the
Defendants' names, the Court concludes that Plaintiff
misidentified these Defendants at his deposition.

must be granted in favor of Defendant Caldwell.  Compare Kounelis v. Sherrer, 529 F.Supp.2d 503, 531-32 (D.N.J. 2008) (inmate's demonstration that cell searches corresponded with significant events in inmate's litigation against prison staff demonstrated genuine issue of fact precluding summary judgment).

As for the February search, Plaintiff again fails to establish the necessary link between his filing a grievance and the offending search.  In his Amended Complaint, Plaintiff explains that he filed a grievance on February 2, 2005 and that a retaliatory search was conducted the very next day.  (Am. Compl. ¶12.)  Caldwell refutes Plaintiff's account and states that he was conducting a "routine cell search" on February 3, 2005.  Caldwell Decl. ¶3.

Although Plaintiff alleges that he suffered a retaliatory search by Caldwell the day after filing his grievance, which could be considered "suggestive" timing, Plaintiff does not specifically allege or testify that he identified Caldwell in this grievance. Again, Plaintiff's failure to identify any record fact to support his allegations, and refute Defendant's assertion that the search conducted was routine, is fatal to his claim.  See Fed.R.Civ.P. 56(e)(2).  The Court cannot conclude that Plaintiff has established the causation element of a retaliation claim.

Plaintiff also argues that Defendant Wehrwein conducted two retaliatory cell searches on April 21, 2005 and June 9, 2005. (Am. Compl. ¶21.)  However, Plaintiff fails to identify why the

40

first search should be considered retaliatory. (Id.) Plaintiff alleges that the second search was conducted in response to a grievance filed against Wehrwein. (Id.) Defendant Wehrwein responds that he is required to conduct cell searches of inmates assigned to his unit and that all searches were conducted in accordance with New Jersey law. Wehrwein Decl. ¶3. Plaintiff points to no record fact to suggest that the search was conducted for any other reason. Again, Plaintiff cannot rely on allegations alone to establish the necessary link between an alleged adverse action and his constitutionally protected right to file grievances. See Fed.R.Civ.P. 56(e)(2).

The Court further notes that Plaintiff's claims fail because Defendants have proffered a legitimate, penological reason for the searches. As noted, Caldwell and Wehrwein state that they were "required to conduct cell searches of inmates assigned to [their] unit[s]" and that all searches were "conducted in accordance with N.J.A.C. 10A:3." Caldwell Decl. ¶2; Wehrwein Decl. ¶3. N.J.A.C. 10A:3-5.3 directs that "[n]o inmate shall be searched as punishment or discipline except as provided by N.J.A.C. 10A:3-5.10," which allows testing for prohibited substances. Again, Plaintiff offers nothing beyond bare allegations to dispute Defendants' contention that the alleged retaliatory searches were conducted lawfully and for legitimate reasons.

### c. Retaliation Claims Based on False Charges

Plaintiff alleges that Defendants Caldwell, Crenny, Dice,

41

Eisinger and Wehrwein filed false and intimidating charges against Plaintiff in retaliation for naming these Defendants in grievances and lawsuits. (Am. Compl. ¶¶12, 13, 18, 19, and 21.) Defendants refute Plaintiff's allegations.  Again, Plaintiff fails to point to any record fact to refute Defendants assertion that these charges were legitimately filed.

On February 3, 2005, Defendants Caldwell and Crenny wrote disciplinary charges against Plaintiff when Plaintiff threatened Caldwell and Crenny with his cane, refused to allow Caldwell to search Plaintiff's property and generally engaged in disruptive conduct.  Caldwell Decl. ¶¶7-10, Ex. B; Crenny Decl. ¶¶ 2-7. Plaintiff offers nothing to dispute Defendants' stated reasons for issuing disciplinary charges.  In the absence of any evidence to support the causation element for retaliation, Plaintiff's claim must fail.

Plaintiff alleges that Defendant Dice filed false charges against him on July 7, 2005 "for lying about going to get my medication and then legal mail." (Am. Compl. ¶18.)  Dice denies this allegation, stating that he filed a disciplinary charge against Plaintiff for giving a false statement, which was later downgraded to a lesser offense.  Dice. Decl. ¶¶4-5.  Because Plaintiff fails to allege any reason why Dice would want to retaliate against Plaintiff, Plaintiff fails to state a claim for retaliation.

Plaintiff also alleges that Defendant Eisinger wrote a
retaliatory, disciplinary charge against Plaintiff on November 4,
2005.  (Am. Compl. ¶19.)  Eisinger states that he wrote an "on-
the-spot" disciplinary charge against Plaintiff for "failure to
comply with a written rule or regulation of the correctional
facility."  Eisinger Decl. ¶¶10-11.  Again, in light of
Plaintiff's failure to offer any evidence to suggest that the
charge was filed because Plaintiff named Eisinger in a grievance,
Plaintiff's claim fails.

Finally, Plaintiff contends that Defendant Wehrwein filed a
false disciplinary charge against Plaintiff and confiscated his
hot pot.  (Am. Compl. ¶21.)  Wehrwein denies this allegation.
Wehrwein states that he issued on-the-spot charges on April 21,
2005 for "failure to comply with a written rule or regulation of
the correctional facility" and a disciplinary charge on June 9,
2005 "possession of anything not authorized for retention or
receipt by an inmate."  (Wehrwein Decl. ¶¶ 5-8).  Again,
Plaintiff's failure to offer any evidence from which a jury could
infer that these charges were filed because Plaintiff named
Wehrwein in a grievance is fatal to Plaintiff's claim.

### d.   Retaliation Claim Based on Cane Confiscation

Plaintiff also claims that Defendant Caldwell confiscated
Plaintiff's cane during the February 3, 2005 incident in
retaliation for filing Plaintiff having filed a grievance against
Caldwell.  (Am. Compl. ¶12.)  Caldwell denies this allegation and

states that the cane was confiscated because Caldwell was
concerned that Plaintiff would use the cane as a weapon.  Caldwell
Decl. ¶¶7-9.  Caldwell prepared a Seizure of Contraband Report
stating that the reason for the confiscation was that the item
posed a threat to the security and orderly operation of the prison
facility.  Caldwell Decl. Ex. A.  Defendant Crenny also states
that Plaintiff threatened Crenny, telling him, "Don't get
involved, bro, I will hurt you with or without a cane, I will take
your life and livelihood."  Crenny Decl. ¶3.  Plaintiff offers
nothing to refute Defendants' contention that Plaintiff's cane was
properly confiscated.  In the absence of any record fact from
which a jury could find that Plaintiff's cane was taken in
retaliation for grievances filed against Caldwell, summary
judgment must be granted in Defendants' favor.

> ### e.   Retaliation Claim Based on Denial of Religious Services

Plaintiff contends that on September 16, 2005, Defendant
McDowell denied Plaintiff access to Ju'mah prayer in retaliation
for Plaintiff having filed a grievance and civil action naming
McDowell in 1998.  (Am. Compl. ¶20.)  See Kwanzaa v. Morton, et
al., Civil Action No. 98-2709.  Defendant McDowell denies
Plaintiff's allegation.  McDowell Decl. ¶2.  But even if the Court
were to credit Plaintiff's bare allegation that he was denied
access to Ju'mah service on September 16, 2005, Plaintiff points
to no record fact by which a jury could reasonably find a causal

relationship between the litigation Plaintiff filed in 1998 and the alleged denial of religious service several years later on September 16, 2005.  Therefore, Plaintiff's retaliation claim on this basis fails as a matter of law.

### 3.  Plaintiff's Privacy Claims

Plaintiff makes numerous allegations that his medical privacy rights were violated by Defendants McDowell, Wehrwein, and the CMS Defendants.[13]  Plaintiff alleges that on October 7, 2005,[14] Defendant McDowell read Plaintiff's medical records in the Medical Department (Am. Compl. ¶20); on June 8, 2005, Defendant Wehrwein read Plaintiff's medical records and legal materials in the course of searching Plaintiff's cell (Am. Compl. ¶21); beginning on March 17, 2005, the CMS defendants have repeatedly violated Plaintiff's privacy rights by conducting "open-door examinations" and talking loudly about his medical information with corrections officers working in the area.  (Am. Compl. ¶26.)  Plaintiff specifically alleges that on March 17, 2005, Defendant Nurse Kudla spoke loudly about Plaintiff's medical information in front of non-medical

---

[13]   Plaintiff also alleges that Defendant D. Ayers violated his medical privacy by listening to a conversation between Plaintiff and a nurse.  (Am. Compl. ¶14.)  As previously noted, Ayers was never served and thus never became a proper party to this case. See supra note 11.  The Court also recognizes that Plaintiff points to no record facts to support his allegation that Ayers violated Plaintiff's privacy rights.  Again, Plaintiff's failure to pursue his claim against Ayers after three years of litigation would severely prejudice Plaintiff's claim even were the claim properly before the Court.

[14]   Plaintiff identified the date as October 27, 2005 at his deposition.  See Kwanzaa Dep. 135:18-137:7.

staff, (Pl. SOF at ¶29), and Nurse Hollenbeck put a medical slip for Plaintiff on a corrections officer's desk.  (Am. Compl. ¶27.) Plaintiff also testified that Defendant Shah called an officer to the door and spoke loudly about his medical status.  (Kwanzaa Dep. 127:7-128:8.)

     In Doe v. Delie, 257 F.3d 309 (3d Cir. 2001), the Third Circuit considered an inmate plaintiff's complaint regarding an "open-door" examination room policy, disclosure of his medical condition to corrections officer escorts, and loud announcement of the names of his medications.  Id. at 312.  In the context of reviewing the District Court's grant of qualified immunity, the Court concluded that "prison inmates retain a Fourteenth Amendment substantive due process right to privacy in their medical information."  Id. at 323.  However, the Court qualified that this constitutional right is subject to "substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security."  Id. at 317.  Because the Court held that the plaintiff's right to privacy was not clearly established so as to deny defendants qualified immunity, the Court did not consider whether the policies and actions complained of by the plaintiff were legitimate restrictions on the plaintiff's right to medical privacy.  Id. at 322-23.

     To determine whether a policy or regulation places a legitimate restriction on a constitutional right, the Court must

46

ask "whether the regulation is 'reasonably related to legitimate penological interests.'" <u>Washington v. Harper</u>, 494 U.S. 210, 223 (1990)(quoting <u>Turner</u>, 482 U.S. at 89)).  To answer, the Court considers (1) whether there is rational connection between the regulation and a "legitimate governmental interest" such that "the asserted goal is so remote as to render the policy arbitrary or irrational," (2) whether alternative means of exercising the right exist that remain open to inmates, (3) the impact accommodation of the right will have on guards, other inmates, and prison resources and (4) "the absence of ready alternatives." <u>Turner</u>, 482 U.S. at 89-90.

The State Defendants certify that "inmate medical information is maintained as confidential" and that "[m]edical treatment and interviews are also treated as confidential." Knowles Decl. ¶2; MacFarland Decl. ¶3.  "The presence of custody staff in the vicinity of medical treatment or interviews in close custody units is only to ensure that security is maintained in these units." Knowles Decl. ¶2; MacFarland Decl. ¶5.  The Court finds that there is a rational connection between this policy and the State's legitimate interest in maintaining prison security.  The Court also notes that accommodating Plaintiff's privacy right by requiring some minimum distance between custody staff and medical personnel in this context presents too substantial a risk to prison security.

47

The State Defendants further certify that "[c]lose custody unit policies require medical personnel to be escorted by housing unit custody staff while they are conducting medical interviews or dispensing medications" so as "to ensure that security is maintained in these units."  Sherrer Decl. ¶3; Knowles Decl. ¶3; MacFarland Decl. ¶4.  The Court again finds that there is a rational connection between this policy and the State's legitimate interest in maintaining prison security.

Therefore, to the extent that Plaintiff states his claims against the CMS Defendants based on conducting interviews and examinations in the vicinity of officers, Plaintiff fails to make out a constitutional claim.  To the extent that Plaintiff states his claims based on the volume of the CMS Defendants' voices, Plaintiff fails to allege any specific instance where Plaintiff's medical information was overhead by a third party.  Plaintiff's bare assertion that he has "personally overhead nurses speak to officers about [his] medical information and other prisoners" will not suffice at this stage in the litigation.  See Fed.R.Civ.P. 56(e)(2).

As for Plaintiff's more specific allegations, that Defendant Kudla spoke loudly about Plaintiff's medical information in front of non-medical staff, that Nurse Hollenbeck put a medical slip requesting for Plaintiff on a corrections officer's desk, and that Dr. Shah called an officer to the door and spoke loudly about Plaintiff's medical condition, Defendants correctly respond that

48

Plaintiff points to no evidence to support these contentions. (CMS Defendants' Brief at 30.)  In light of Plaintiff's failure to point to any record fact by which a jury could reasonably find that Plaintiff's medical privacy rights had been violated, Plaintiff's claim must fail.

Plaintiff's claims against Defendants McDowell and Wehrwein share a the same fate.  Both officers deny reading Plaintiff's medical records or legal papers.  McDowell Decl. ¶3; Wehrwein Decl. ¶4.  Because Plaintiff offers nothing beyond his allegations to refute these sworn statements, Plaintiff has not met his burden on summary judgment and these claims must be dismissed.

### 4.    Plaintiff's Deliberate Indifference Claims

Plaintiff contends that CMS Defendants Pipitone, Shah, Kudla, and Green, and State Defendants Knowles, Sherrer, MacFarland, Caldwell, Crenny and Eisinger were deliberately indifferent to his medical needs in violation of the Eighth Amendment.  Defendants again contend that Plaintiff failed to introduce any evidence supporting these claims.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  To set forth a cognizable claim for a violation of the right to adequate medical care, an inmate must allege:  (1) a serious medical need and (2) behavior on the part of prison officials that

49

constitutes deliberate indifference to that need.  <u>Estelle</u>, 429
U.S. at 106; <u>Natale v. Camden County Correctional Facility</u>, 318
F.3d 575, 582 (3d Cir. 2003).

        To satisfy the first prong of the <u>Estelle</u> inquiry, the inmate
must demonstrate that his medical needs are serious.  "Because
society does not expect that prisoners will have unqualified
access to health care, deliberate indifference to medical needs
amounts to an Eighth Amendment violation only if those needs are
'serious.'"  <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).  The Third
Circuit has defined a serious medical need as: (1) "one that has
been diagnosed by a physician as requiring treatment;" (2) "one
that is so obvious that a lay person would recognize the necessity
for a doctor's attention;" or (3) one for which "the denial of
treatment would result in the unnecessary and wanton infliction of
pain" or "a life-long handicap or permanent loss."  <u>Atkinson v.
Taylor</u>, 316 F.3d 257, 272-73 (3d Cir. 2003)(internal quotations
and citations omitted); <u>see also</u> <u>Monmouth County Correctional
Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir.
1987), <u>cert. denied</u>, 486 U.S. 1006 (1988).

        The second element of the <u>Estelle</u> test requires an inmate to
show that prison officials acted with deliberate indifference to
his serious medical need.  <u>See</u> <u>Natale</u>, 318 F.3d at 582 (finding
deliberate indifference requires proof that the official knew of
and disregarded an excessive risk to inmate health or safety).
"Deliberate indifference" is more than mere malpractice or

50

negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S. 825, 837-38 (1994); see also Natale, 318 F.3d at 582.

A prisoner's subjective dissatisfaction with his medical care does not in and of itself indicate deliberate indifference. Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal citation omitted).  Thus, even if a doctor's judgment concerning the proper course of a prisoner's treatment is ultimately shown to be mistaken, this would not constitute an Eighth Amendment violation, but at most, medical malpractice.  Estelle, 429 U.S. at 105-06; White, 897 F.2d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment.  See Rouse, 182 F.3d at 197.  The Court has also held

that needless suffering resulting from the denial of simple medical care which does not serve any penological purpose violates the Eighth Amendment.  <u>Atkinson</u>, 316 F.3d at 266; <u>see also</u> <u>Monmouth County Correctional Institutional Inmates</u>, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment'" (quoting <u>Inmates of Allegheny County Jail</u>, 612 F.2d at 762)).

Here, with regard to the first element, the record shows that Plaintiff has some serious medical needs.  With regard to the second element, however, the Court finds that Plaintiff has failed to show deliberate indifference on the part of Defendants.

Plaintiff contends that he was denied medical care when Defendants refused to comply with medical orders directing that he be permitted to ambulate with a cane, use medically prescribed devices, such as braces, medical boots, an egg crate mattress and an asthma inhaler, and be restricted from standing too long; Defendants refused to provide Plaintiff with prescription glasses and medication; Defendants failed to provide Plaintiff with a throat specialist; and Defendants failed to provide blood tests and chronic care within ninety days.  (Am. Compl. ¶¶12, 13, 19, 26 and 27.)

### a.   Cane Confiscation

With regard to the confiscation of Plaintiff's cane, the

52

record indicates the cane was confiscated twice--once by
Defendant Caldwell on February 3, 2005 and again upon Plaintiff's
arrival at SWSP and placement in detention on March 17, 2005.
(State Def, SOF ¶ 14; Pl. Dep. 95:21 - 97:25.)  Defendants
contend that, on both occasions, Plaintiff's cane was confiscated
in the interest of safety and security.  With regard to the
February 2005 incident, Caldwell states that the cane was
confiscated because he was concerned that Plaintiff would use the
cane as a weapon.  (Caldwell Decl. ¶¶7-9.)  Defendant Crenny also
states that Plaintiff threatened him, telling Crenny, "Don't get
involved, bro, I will hurt you with or without a cane, I will
take your life and livelihood."  (Crenny Decl. ¶3.)  Plaintiff
offers nothing to refute Defendants' contention that Plaintiff's
cane was confiscated for legitimate, penological reasons.
Defendants have sufficiently established that Plaintiff's cane
was not confiscated to deprive Plaintiff of needed care or to
cause Plaintiff undue suffering.  Summary judgment must be
granted in Defendants' favor.

### b.    Standing Restriction

Plaintiff contends that Defendant Eisinger was deliberately
indifferent to Plaintiff's medical condition when he required
Plaintiff to stand along a wall upon his arrival at SWSP while
Plaintiff's housing assignment was made.  (Am. Compl. ¶19; Def.
SOF ¶28).  Plaintiff claims that he held up his medical records
and informed Defendant Eisinger that he could not stand for

53

prolonged periods of time.  (Pl. SOF at ¶13.)  Eisinger states
that when Plaintiff was instructed to stand along the wall while
his housing assignment was made, Plaintiff was "loud and
disruptive, and yelled that he wanted to go back to Trenton."
Eisinger Decl. ¶¶4-5.  Eisinger wrote two separate incident
reports regarding the confrontation.  See Exhibits A and B to
Eisinger Decl.  Neither the incident reports authored by Eisinger
nor his Declaration indicate that Plaintiff informed Eisinger
about his standing restriction.  Plaintiff fails to point to any
evidence, beyond his own allegations, that suggests that Eisinger
knew about Plaintiff's standing restriction and deliberately
ignored Plaintiff's medical need.  See Natale, 318 F.3d at 582.
Moreover, the record does not indicate that Plaintiff was forced
to stand beyond the alleged medical restriction or Plaintiff's
physical capability.  Therefore, summary judgment must be granted
in Defendant's favor.

     Plaintiff also alleges that his medical restriction for no
prolonged standing was deleted from his medical records and later
added again as a 15 minute restriction.  (Am. Compl. ¶27.)
Plaintiff admits, however, that he cannot establish the
circumstances by which the said restriction was deleted.  Pl.
Dep. 121:2-4 ("And I can't prove this, but I believe [Nurse
Kudla] was the one that took the information out about no
prolonged standing, but I cannot prove that.")  Even if Plaintiff
could establish that Nurse Kudla deleted the restriction,

54

Plaintiff has failed to allege any facts to suggest a "culpable state of mind" on the part of this Defendant, or any Defendant, to suggest that the restriction was deleted with the intention of causing Plaintiff to suffer.  <u>See</u> <u>Rouse</u>, 182 F.3d at 197. Plaintiff simply fails to make out a constitutional claim on this basis.

### c. Medical Devices: Boots, Braces and Egg Crate CMS Defendants

As to the allegations that Plaintiff was denied boots, braces, and an egg crate mattress, these claims fail because the record is clear that medical personnel determined that these items were unnecessary.  <u>See</u> CMS Def. SOF ¶ 40; 48.  Plaintiff's contention that these items are, in fact, necessary is merely a disagreement over medical judgment which does not state an Eighth amendment claim.  <u>White</u>, 897 F.2d at 110.

To the extent Plaintiff states that Defendants were deliberately indifferent to his medical need for an inhaler when Plaintiff was placed in detention on March 17, 2005, the record does not support the claim.

As previously noted, the State Defendants certify that prison policy limits access to medical devices and "keep on person" medication in administrative detention or segregation. <u>See</u> MacFarland Decl. ¶¶6-7.  Recognizing that the State has an important and substantial interest in the security and order of its prison facilities, <u>see</u> <u>Procunier</u>, 416 U.S. at 412-14, the

Court finds that the policies in question rationally relate to a legitimate, government interest.  Moreover, the record shows that medical staff was called to examine Plaintiff when he exhibited signs of distress and that Plaintiff was taken to the emergency room, where he was diagnosed as having suffered an acute asthma attack.  (Pl. SOF at ¶17; Def. SOF at ¶44.)  On these facts, the Court cannot conclude that Defendants were deliberately indifferent to Plaintiff's medical needs.

### d.   Housing Restriction

To the extent that Plaintiff states that Defendants were deliberately indifferent to his need to be housed on the first floor, (Pl. SOF ¶18), Plaintiff fails to offer any proof that the Defendants knew of and disregarded his housing restrictions.  See Rouse, 182 F.3d at 197.

### e.   Throat Specialist

Plaintiff alleges that Defendants were deliberately indifferent to his need to see a throat specialist.  (Am. Compl. ¶26.)  Plaintiff's contention that a specialist was necessary is merely a disagreement over medical judgment which does not state an Eighth amendment claim.  White, 897 F.2d at 110.

### f.   Eye Glasses

Plaintiff alleges that he was denied prescription eyeglasses for seven months.  (Am. Compl. ¶26.)  However, medical records

show otherwise.  Plaintiff received an eye exam on January 25,
2005 and instructed that he did not want new glasses.  CMS Def.
SOF ¶37.  Plaintiff was seen for a second eye exam on April 21,
2005 but declined to be examined and declined a new pair of
glasses.  Id.  Plaintiff was seen a third time on August 31, 2005
and complained that his glasses were broken.  Id. at ¶52.  New
glasses were ordered but did not arrive until October 13, 2005.
Id. at ¶56.  Based on this record, Plaintiff fails to establish
that any Defendant was deliberately indifferent to his need for
glasses.

### g.    Denial of Medication

Plaintiff alleges that he was arbitrarily denied the pain
medication Darvocet.  (Am. Compl. ¶26.)  Plaintiff's medical
records indicate that his pain medication was switched from
Darvocet to Ultram on March 25, 2005.  CMS Def. SOF ¶38.  Both
medications are used for chronic pain.  Id.  Plaintiff's
contention that he should have been prescribed Darvocet rather
than Ultram is merely a disagreement over medical judgment, which
does not state an Eighth Amendment claim.  White, 897 F.2d at
110.

To the extent Plaintiff attempts to state a claim based on
the fact that he was charged for nasal spray that he did not
receive, (Am. Compl. ¶26), Plaintiff's claim must fail absent
some showing that he has exhausted all available administrative
remedies.  See 42 U.S.C. § 1997e(a).  Moreover, it is doubtful

this claim states a constitutional violation.

### h.   Diagnostic Tests and Chronic Care

Plaintiff alleges that he was denied blood tests and chronic care in July 2005 and July 2006.  (Am. Compl. ¶27.)  However, medical records show that various lab studies were completed for Plaintiff on July 6, 2005, including chemistry, hematology, immune deficiency panel and viral load.  CMS Def. SOF ¶41. Medical records also indicate that various lab studies were completed for Plaintiff in April 2006 but do not show that labs were completed in July 2006.  Id. at ¶75.  Nonetheless, Plaintiff was seen by medical personnel four times during the month of July in 2006.  Id. at ¶¶80-84.  Based on this record, Plaintiff cannot establish that any Defendant was deliberately indifferent to his medical needs.

For the aforementioned reasons, all of Plaintiff's Eighth amendment claims fail as a matter of law.

### 5.  Plaintiff's Excessive Force Claims

Plaintiff alleges that Defendants Crenny and Dice used excessive force against him.  Plaintiff claims that on February 3, 2005, Crenny bent Plaintiff's fingers back as Crenny was escorting Plaintiff to detention.  (Am. Compl. ¶13.)  Plaintiff alleges that Dice kicked Plaintiff as he was having an asthma attack on March 17, 2005.  (Compl. ¶52.)

"The test for whether a claim of excessive force is constitutionally actionable is 'whether force was applied in a

58

good faith effort to maintain or restore discipline or
maliciously and sadistically for the very purpose of causing
harm.'" Giles v. Kearney, 571 F.3d 318, 326 (2009) (quoting
Whitley v. Albers, 475 U.S. 312, 319 (1986)).  Courts must
consider: "(1) the need for the application of force; (2) the
relationship between the need and the amount of force that was
used; (3) the extent of injury inflicted; (4) the extent of the
threat to the safety of staff and inmates, as reasonably
perceived by the responsible officials on the basis of the facts
known to them; and (5) any efforts made to temper the severity of
a forceful response." Id. (citing Whitley, 475 U.S. at 319).

     Here, Defendants deny that they applied any force on
Plaintiff.  Crenny Decl. ¶5; Dice Decl. ¶3.  Plaintiff points to
nothing in the record to contradict these assertions.  Again,
Plaintiff may not rest on his pleadings to state his claim but
must support his allegations by pointing to some record fact that
suggests a genuine issue for trial.  Fed.R.Civ.P. 56(e)(2).
Plaintiff has not done so.  Therefore, his excessive force claims
fail as a matter of law.

## 6.   Plaintiff's Denial of Religious Services Claim

     Plaintiff alleges that Defendant McDowell violated his First
Amendment right to free religious exercise when McDowell
prevented Plaintiff from attending Ju'mah service on September
16, 2005.  (Am. Compl. ¶20.)  To establish his claim, Plaintiff
must demonstrate that the restriction on religious practice was

not reasonably related to a legitimate, penological interest.
O'Lone v. Estate of Shabazz, 482 U.S. 342, 349-50 (1987); Turner,
482 U.S. at 89.

Here, however, Defendant McDowell denies preventing
Plaintiff from attending Ju'mah service.  McDowell Decl. ¶2.
Plaintiff fails to point to anything in the record to dispute
McDowell's contention or otherwise establish that a restriction
was placed on his religious practice.  Therefore, Plaintiff's
First Amendment claim fails as a matter of law.


    **C.  Qualified Immunity**

Defendants contend that Plaintiff's Complaint should be
dismissed because all Defendants are entitled to qualified
immunity.  In this case, because the Court finds no
constitutional violations occurred, the Court need not delve into
a qualified immunity analysis.  See Curly v. Klem, 499 F.3d 199,
207 (3d Cir. 2007).

    **D.  Punitive Damages**

In a § 1983 case, punitive damages "are available where the
defendants have acted with a reckless or callous disregard of, or
indifference to, the rights and safety of others."  Keenan v.
City of Phila., 983 F.2d 459, 469-70 (3d Cir. 1992)(internal
quotation omitted).  Punitive damages are reserved "for cases in
which the defendant's conduct amounts to something more than a
bare violation justifying compensatory damages or injunctive

relief." <u>Id.</u> at 470 (quoting <u>Cochetti v. Desmond</u>, 572 F.2d 102, 106 (3d Cir. 1978)).  The Court has not found Defendants' conduct violated Plaintiff's constitutional rights and finds no reason to award punitive damages.

**VI.  Plaintiff's Request for a Temporary Restraining Order**

Plaintiff requests that this Court issue a temporary restraining order ("TRO") to provide him various relief unrelated to the allegations in his Complaint and Amended Complaint. Plaintiff seeks emergency relief from the impairment of his religious freedom, discrimination based on disability and denied access to medical devices.  (Pl.'s Br. in Support of TRO Motion at 1-3.)  Plaintiff complains that he was exposed to second-hand smoke and has been denied "necessities" such as clean sheets, showers, yard, proper ventilation and heat and drinking water. (<u>Id.</u>)  Plaintiff also claims that was denied the right to purchase postage stamps.  (<u>Id.</u>)  Plaintiff further requests enforcement of an order to install video cameras at the prison and the appointment of an independent investigator.  (<u>Id.</u>) Plaintiff's request for a TRO is denied.

"When deciding whether to issue a preliminary injunction, a district court must consider: '(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting the preliminary relief will result in even

greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.'" <u>McTernan v. City of York, Pennsylvania</u>, 577 F.3d 521, 526 (3d Cir. 2009) (quoting <u>United States v. Bell</u>, 414 F.3d 474, 478 n.4 (3d Cir. 2005)).

In his moving papers, Plaintiff does not even attempt to meet the elements for a TRO; rather, Plaintiff seeks only to raise new claims for relief. Plaintiff may not amend his Complaint through arguments in a brief.[15] <u>Bell v. City of Philadelphia</u>, 275 Fed.Appx. 157, 160 (3d Cir. 2008).

Moreover, to the extent that Plaintiff seeks to bring claims regarding prison conditions to a federal court, Plaintiff is reminded that he must first exhaust all available administrative

---

[15] The Court notes that Plaintiff filed additional letters that <u>may</u> state new claims against new defendants [Docket No. 116, 117, 118, 119 and 123]. As the Court instructed in its Order dated April 21, 2009, Plaintiff cannot pursue new claims through arguments in a brief or by filing letters with the Court. <u>See Bell</u>, 275 Fed.Appx. at 160.
Moreover, Fed.R.Civ.P. 20(a)(2) prohibits Plaintiff from joining new defendants in this action where the claims against such defendants are not transactionally related to the claims stated in Plaintiff's Complaint and Amended Complaint. <u>See George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007)("Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a] 50-claim, 24-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees--for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.") Therefore, in the event that Plaintiff wishes to pursue these claims, the Court cautions Plaintiff that he must file a new Complaint, in compliance with Fed.R.Civ.P. 8. Plaintiff is also reminded that he must exhaust all available administrative remedies before bringing suit. <u>See</u> 42 U.S.C. § 1997e(a).

remedies before seeking a federal remedy.  <u>See</u> 42 U.S.C. §
1997e(a).

**VII.  CONCLUSION**

    For the aforementioned reasons, Plaintiff's requests for
reconsideration and for a temporary restraining order are denied.
All Defendants are entitled to summary judgment as to all claims.
An appropriate Order will issue this date.


Dated: <u> November 17, 2009 </u>    <u>s/Renée Marie Bumb          </u>
                                 RENÉE MARIE BUMB
                                 UNITED STATES DISTRICT JUDGE